Forry v. Ridge.

EDWIN H. FORRY, Respondent, v. T. S. RIDGE,
Appellant.

Kansas City Court of Appeals, February 19, 1894.

1. **Municipal Corporations:** CHARTER OF KANSAS CITY: CALLED SES-
SIONS OF COMMON COUNCIL. The charter of Kansas City provides that
the common council shall meet on the third Monday in April and
thereafter on the first Monday of every month, but not oftener,
unless especially convened by the mayor in pursuance of law, and
the mayor shall call special sessions by proclamation, which shall be
published as may be provided by ordinance. There was no ordinance.
*Held:* (1) Special sessions called by proclamations of the mayor
were illegal, as were all acts done by it when so assembled. (2) The
meeting of all the members of the council at such special meetings
would not under their acts be legal as they only have power to bind the
city when duly convened at the proper time and place and upon due
notice, when notice is requisite. (3) The object of the provision
was not only to warn aldermen, but there was a manifest purpose to
warn the public of such meetings. (4) But where a statute has in
the practice of several years, as in this case, received an interpreta-
tion by public officers, lawyers and the judiciary, and its language
gives some color to such interpretations and rights, and titles have
become vested under such interpretation, the courts will be slow to
disturb such interpretations, though convinced it is wrong.

2. ———: ———: CITY ENGINEER'S DUTY TO APPORTION COSTS OF
IMPROVEMENTS. Under the charter of Kansas City, the board of
public improvements causes the city engineer to apportion the cases
of street improvements; the engineer, and not the board, apportions
the cost.

3. ———: ———: CHARGE FOR STREET IMPROVEMENTS ON ENTIRE TRACT.
The charter of Kansas City charges the cost of street improvement
upon the adjoining lands according to the frontage thereof. A tax
bill purported to charge such front extending back only one hundred
feet whereas the entire tract was four hundred and eighty feet in
depth, *held,* error, but one that cannot injure the land owner.

*Appeal from the Jackson Circuit Court.*—HON. J. H.
SLOVER, Judge.

**AFFIRMED.**

*James G. Smart* for appellant.

(1) The court properly gave declaration of law number 3 in behalf of defendant, that under the charter of Kansas City it was the duty of the board of public works to apportion the cost of construction of sidewalk in question, and that this power could not be delegated. Appellant's abstract of record (Vid.) p. 29; Charter, 1889, sec. 6, art. 9, p. 85. But the court erred in failing to find for defendant in pursuance of said declaration. *Hearn v. Keath*, 63 Mo. 88, 89. *Bruen v. Fair Ass'n*, 40 Mo. App. 430, 431; *Stifel v. Cooperage Co.*, 38 Mo. App. 343, 344. *Mfg. Co. v. Hamilton*, 51 Mo. App. 125; *St. Louis v. Clemens*, 52 Mo. 138; *White v. Bayonne*, 49 N. J. L. 312; *In matter of petition of Hearne*, 96 N. Y. 379; *Merritt v. Portchester*, 29 Hun. 620; *St. Joe ex rel. Danaher v. Wilshire*, 47 Mo. App.130; *Ruggles v. Collier*, 43 Mo. 365, 366. The board of public works could only act by meeting in a body as a board. The act of any member or members of the board is not the act of the board. *Johnson v. School District*, 67 Mo. 321; *State to use v. Tiedeman*, 69 Mo. 518. (2) During the month of February, 1890, a special session of the common council could only be called by the mayor by proclamation published as provided by ordinance. Charter of Kansas City (adopted April 8, 1889), sec. 14, art. 3, p. 12; sec. 11, art. 4, p. 29, same charter; Amended Charter of Kansas City, (approved March 24, 1875), sec. 8, art. 4, p. 19. Appellants abstract of record, pp. 14, 15. The charter provides a mode for convening the common council in special session. A special meeting not called in conformity to the prescribed mode is unauthorized and illegal. *State v. Smith*, 22 Minn. 222; *Lord v. Anaka*, 36 Minn. 176; *State v. Bachelor*, 22 N. Y. 128; *Smyth v. Dailey*, 2 H. L. 802; *Bloomfield v. Charter Oak Railroad*, 121

U. S. 130; Angel & Ames on Cor. [8 Ed], sec. 492, p. 487; *Allen v. Burlington*, 45 Vt. 210, 211; *Sherwin v. Bugbee*, 16 Vt. 444; *White v. Bayonne*, 49 N J. L. 312; *Att'y Gen. v. Scott*, 1 Vesey, 413; Dillon, Municipal Corporations [4 Ed.], secs. 263, 264, 259; *Town Council of the Borough of Kidderminster v. Richard Varsey*, (Queen's Bench, 1858 or 1859), 1 Ellis & Ellis, 770; *King v. Mayor, etc., of Town of Shrewbury*, Hardwick (cases *temp.*)147; *Rex v. May et al.*, *Freemen of Salsash*, 5 Burrow, 2682, *S. C; Ruggles v. Collier*, 43 Mo. 365; Cooley on Const. Lim. [6 Ed.], pp. 231, 232; 1 Beach on Private Corporations, sec. 281; *Riley v. Oglebay*, 25 W. Va. 36; *Stevens v. Eden Meeting House*, 12 Vt. 688; *Warner v. Mower*, 11 Vt. 393; *Stowe v. Wyse*, 7 Conn. 214. (3) Under the charter, an integral estate or single tract of land can only be assessed with a special tax for the construction of a sidewalk. There is no power in the board of public works or the engineer to divide a single tract of land whether 'lot' or 'parcel of land' for the purpose of special assessment. *State ex rel. Wyatt v. Railroad*, 114 Mo. 9; *Kemper v. King*, 11 Mo. App. 128; *Kemper v. King*, 11 Mo. App. 583, 584; *City of St. Louis v. Provenchere*, 92 Mo. 69; *Moorley v. Weskley*, 86 Mo. 455; Cooley on Taxation, [2 Ed.], 401, 280; *Reading v. Finney*, 73 Pa. St. 472; *Hapgood v. Morton*, 28 Kan. 767; *Bruce v. McBee*, 23 Kan. 382; *Chaliss v. Hekelnkoemper*, 14 Kan. 477; *County Commissioners v. Mining Co.*, 61 Md. 552; *Nason v. Ricker*, 63 Me. 383; *Suffolk v. Nantucket*, 13 Pick. 497; *Crane v. French*, 50 Mo. App. 370.

*W. C. Scarritt* for respondent.

(1) The evidence shows that the engineer computed the cost of the work and apportioned the same among the several lots or parcels of land to be charged

therewith, and that the same was done under the direction of the board of public works, and that the board approved the same and issued special tax bills to pay the cost of the works. This is exactly what the charter requires. Charter of 1889, art. 9, sec. 6, p. 85. (2) Appellant's next contention is, that the ordinance providing for the work for which the tax bill in question was issued is void because no ordinance had been passed by the common council directing how the proclamation of the mayor calling special sessions of the council should be published. The provision of the charter giving the mayor power to call special sessions of the council is self-enforcing and needs no legislation on the part of the council to give it effect. *Blanchard v. City of Kansas*, 16 Fed. Rep. 444; *McElroy v. Kansas City*, 21 Fed. Rep. 257; *Householder v. City of Kansas*, 83 Mo. 488; *Cummings v. Winn*, 89 Mo. 56. The evidence clearly shows that every member of the council was notified of the meeting and this was sufficient though the method of giving the notice was not such as provided by law. *Russell v. Wellington et al.* 21 N. E. Rep. (Mass.) 630. (3) The tax bill was issued against the land liable to pay for the construction of the sidewalk. City charter, 1889, art. 9, sec. 5, p. 82. Even if the bill did not include as much land as might have been charged for the work, defendant can not complain, as he was charged no more than his proper share and he owned all the land extending back from this street for two blocks.

GILL, J.—This is a suit to enforce the lien of a certain special tax bill for sidewalks constructed in front of defendant's property in Kansas City. The cause was tried by the court sitting as a jury, resulting in a judgment for plaintiff and defendant appealed.

I. The tax bill is attacked, mainly on the ground

that the ordinance directing the improvement was void because not passed at a legal meeting of the city council. We proceed to dispose of this objection before considering others.

The ordinance providing for the work was passed by the common council at a special session thereof held, in pursuance of a call by the mayor, on the tenth day of February, 1890. It is urged that this special meeting was held without authority of law; because there was not then any ordinance fixing the time and manner of publishing the mayor's proclamation calling such special session. The contention is based on the following provisions of the city charter adopted April 8, 1889. "The common council shall hold a meeting on the third Monday in April in each year and thereafter on the first Monday of every month, but not oftener, unless especially convened by the mayor in pursuance of law. Petitions and remonstrances shall be presented to either or both houses of the common council in writing only, and the members of the common council shall at all times have free access to the books and papers of any city officers in the discharge of their duties." Section 14, article 2. Also section 11, article 4 of same charter reading as follows: "The mayor shall call special sessions of the common council by proclamation, which shall be published as may be provided by ordinance. The first of these sections is substantially the same as in the old charter of 1875, but as to the last, it formerly read: "The mayor may call special sessions of the common council by proclamation." Section 8, p. 210, Laws of 1875.

Admitting now (and which is the fact) that the council, at the time this special session was called, had never provided by ordinance for the mode of publishing the mayor's proclamation, was there any

legal authority for the holding of such special meeting? The city authorities seem to have construed these provisions of the charter as primarily authorizing the mayor by proclamation to call special sessions, even in the absence of an ordinance fixing the mode of publication. In other words, that such meetings could be convened according to the former practice *until* the common council should exercise its charter prerogative of prescribing the nature and extent of the published notice.

In our opinion this was a misconception of the law. The city officers had such, and only such powers as were given by the charter. That instrument stands as the embodiment of a constitution; its restrictions, its limitations, command absolute obedience. The mayor and common council are bound by its terms just as other agents are restrained by the positive instructions of the principal. They have authority to do certain things under certain conditions and in a certain manner; these they can do *only* in that manner and in the presence of such conditions. The Kansas City charter now has fixed the dates for general council meetings, to-wit: the third Monday in April and the first Mondays of every other month in each year; and has declared that such council shall not meet *oftener "unless specially convened by the mayor in pursuance of law."* The mayor then is only authorized to "convene" the common council by a proclamation, "published as may be provided by ordinance." It would seem that the people, by their fundamental law, have said to the mayor and council: "You may hold meetings other than those expressly named (to-wit, on the third Monday in April and on the first Mondays of each of the other months), *provided* there be a published notice. We leave you to fix the extent of that publication."

So, then, until the city's legislative body should by ordinance fix the time and manner of such publication, it was not in the power of the mayor to convene a special session of the common council. And even then there could not have been a lawful meeting of that body unless the notice was given in the manner thus imperatively required. 1 Dillon Mun. Corp. [4 Ed.], secs. 259, 263, 264; Cooley on Const. Lim. [6 Ed.], p. 235; *State v. Smith*, 22 Minn. 218, 222; *Bloomfield v. Bank*, 121 U. S. 121; *Allen v. Burlington*, 45 Vt. 202, 210; *The People v. Bachelor*, 22 N. Y. 128; *Smyth v. Darley*, 2 H. L. 789. These authorities as well sustain the position, that as the meeting thus held without legal warning was unauthorized and illegal, so too would any act, done by the body when so assembled, be invalid. Defendant's counsel seems willing to concede that if all the aldermen had assembled, though without legal notice, their acts might be regarded as valid; in other words, that notice would thereby be deemed as waived. We think this concession is beyond the limits of the law. The individual members, single or all together, do not of themselves compose the common council of the municipal corporation, so that when convened any where or at any time they can pass ordinances or transact the business of the corporation. They only have this power when "duly convened at the proper time and place, and *upon due notice in cases where such notice is requisite.*" 1 Dillon, Mun. Corp. [4 Ed.], sec. 259.

The Kansas City charter not only provides when the city council *may* meet in general and special sessions, but expressly *denies* the power to meet at any other time. It is authorized to "hold a meeting on the third Monday in April in each year, and thereafter on the first Monday of every month, but *not oftener* unless especially convened by the mayor in pursuance

of law." There is here an express negative of power in the council to meet except at these stated dates and on such other occasions as it may be called together by the mayor's proclamation. In designating the dates for council meetings, the charter makers had in view, it seems to us, something more than merely to inform *aldermen* of such events. There was a manifest purpose to warn the *public* of the approach of these sessions, so that interests important to them and within the keeping of the council, might be looked after, for within the very terms of the same section of the charter the right of petition and remonstrance is given the citizen. Taxpayers and citizens generally, having then a right to be heard before the council, it was thought just and proper that they should be kept advised of all its meetings.

As we, then construe the provisions of the Kansas City charter, its common council is authorized to meet and transact business on the third Monday in April, the first Monday of each of the other months and at such other date or dates *only* as it may be called together by the proclamation of the mayor published as provided by ordinance; and in the absence of an ordinance so providing, then the mayor can call no special meeting nor can one be legally held.

Were it not, then, for other momentous considerations, we should feel bound to declare the special session of the Kansas City council held on February 10, 1890, to be illegal and the ordinance then passed, providing for this sidewalk, likewise invalid. However, since the city officers, the public lawyers and judiciary, have, in the practice of several years, acted upon a different understanding of what was necessary to convene special sessions of the common council; and since the language of the charter gave *some color* to such interpretation; and since, too, a contrary holding, now, as to such meetings in the past, would unsettle numerous

titles, distract, if not destroy, many private interests and impair the public faith and confidence in a great variety of merely governmental regulations adopted at these special meetings, we feel constrained to uphold their legality, notwithstanding our conviction that such sessions were not called as the charter in fact intended they should be.

In adopting this course we are sustained by the best of precedents. As said by Endlich in his valuable work on the interpretation of statutes: "The greatest deference is shown by the courts to the interpretation put upon the constitution by the legislature, in the enactment of laws and other practical application of constitutional provisions to the legislative business, when that interpretation has had the silent acquiescence of the people, including the legal profession and the judiciary, and especially when injurious results would follow the disturbing of it." Section 527, and cases cited. Judge COOLEY, too, uses this language: "Where there has been a practical construction, which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force which it is not easy to resist. Indeed, where a particular construction has been generally accepted as correct, * * * it is not to be denied that a strong presumption exists that the construction rightly interprets the intention. And where this has been given by officers in the discharge of their official duty, and rights have accrued in reliance upon it, which would be divested by a decision that the construction was erroneous, the argument *ab inconvenienti* is sometimes allowed to have great weight." Cooley, Const. Lim. [6 Ed.], p. 82. The following decisions are in point: *Johnson v. Railroad*, 23 Ill. 202; *Moers v. City of Reading*, 21 Pa. St. 188; *State Line & Juniata R. R. Co's Appeal*, 77 Pa. St. 429; *Howell v. State*, 71

Ga. 224; *Bringham v. Miller*, 17 Ohio, 445.

As already said, the charter is the city's constitution, and the common council, acting with the mayor's approval, is its legislative body. During the last several years a large number and a great variety of important ordinances have emanated from these special sessions; and upon the faith of these, valuable rights have been acquired. And as said in *Moers v. Reading, supra:* If we now should declare these illegal and void and "sweep away at once all the rights, public and private, which have been acquired under them, we must do an amount of mischief which no man's arithmetic can calculate. This is a proper element of legal judgment on such a subject. We are not to overlook the practice of the legislative body, or disregard the consequences of doing so." It may not, however, be impertinent in us to remark that the city authorities should in future more carefully conform to these requirements of the charter. If no ordinance providing the mode of publishing the mayor's proclamation for special session has yet been passed, it ought at once be attended to; and when adopted, the mayor, in convening such special meetings, should, substantially at least, follow the requirements of said ordinance.

II. The trial court, at defendant's request, declared the law to be that under the city charter it was the duty of the board of public works to apportion the cost of the sidewalks among the several lots or parcels of land to be charged therewith, and that if this duty was delegated to any other, etc., then the tax bills were void. The defendant's counsel now complains that the court did not, under said instruction, find for defendant, because it is said it appears without contradiction that the board did not apportion the costs, but permitted this to be done by another. A complete answer to this point is, that the court, at the instigation of defendant, improperly declared the law. It is not made the duty

of the board to apportion the costs of the improvement among the lands to be charged, but "the board of public works shall cause the *city engineer* to compute the cost thereof and apportion the same among the several lots or parcels of land," etc. This apportionment of charges devolves on the city engineer, not on the board, and the evidence clearly shows that in this regard the charter was complied with. There is no merit in this contention of defendant's counsel.

III. It seems that defendant Ridge owns an unplatted square of land fronting six hundred feet on Prospect avenue and running back from the street, west four hundred and eighty feet. This tax bill, for construction of sidewalks along the Prospect avenue front, purports to charge such front extending back only one hundred and fifty feet, whereas the entire tract is four hundred and eighty feet in depth. Ridge then seeks to defeat the bill for the alleged reason that it should have charged the entire block of seven acres. The charter in this respect reads: "The cost of all work on any sidewalk, including curbing and guttering along the side thereof exclusive of the grading of the same, shall be charged as a special tax upon the adjoining lands according to the frontage thereof on the sidewalk." Sec. 5, art. 9, Kansas City Charter, 1889. We think defendant's entire tract, to the full depth of four hundred and eighty feet, should have been described in this tax bill. The land is one parcel and unplatted. But we fail to see wherein the owner was injured to any possible extent by this failure to include the entire seven acres. And we shall not condemn the tax bill and defeat compensation for this improvement on a ground so technical and devoid of merit. These are the only points which deserve attention. The judgment of the circuit court is affirmed. ELLISON, J., concurs. SMITH, P. J., not sitting.