## GASCONADE COUNTY v. JOHN P. GORDON, State Auditor, and JAMES COWGILL, State Treasurer.

In Banc, March 28, 1912.

1. **MANDAMUS: Judgment on Pleadings: Conclusions and Facts.** In mandamus, where the case is put at issue by a motion for judgment on the pleadings, the facts well pleaded in the return, and not the conclusions of law pleaded in the petition or return, are the determinative matters for consideration.

2. **ROAD FUNDS: Distribution: Motor Tax.** The Act of 1911 requires the taxes arising from licenses upon motor vehicles to be placed in the "General State Road Fund."

3. **STATUTES: Enacted at Same Session: In Pari Materia: Construction.** Statutes enacted at the same session of the Legis-

Gasconade County v. Gordon.

lature, by the same minds acting upon the same subject, are *in pari materia;* and in such case the courts construe all the acts in such manner that each and every part thereof may stand, if such construction can be atttained without doing violence to the language used in them. But if they are clearlly inconsistent and repugnant, the later of the two acts prevails, and the earlier one fails.

4. ————: Stamp Act: General State Road Fund Act. The Stamp Act and the General State Road Fund Act are not repugnant and inconsistent, and both can stand, though both relate to the application of State road funds. The Stamp Act fund goes to all counties, is apportioned as school funds are, and can be used by the counties for any legitimate road purposes. The "General State Road Fund" can be used in the construction of permanent roads and for no other purpose, and the act defines such roads to be those constructed of rock and gravel, a "sandy-clay," etc., and says the plans must be approved by the county court and State Highway Engineer, and requires the fund to be distributed among the counties in proportion to the assessed valuation of properties therein. The two acts supplement each other.

5. ————: ————: ————: Legislative Interpretation. The Legislature has uniformly, by appropriation acts and otherwise, recognized that the Stamp Act Fund and the General State Road Fund are distinct funds; and the courts cannot by way of judicial legislation do what the Legislature has not done. Without further legislation the Stamp Act fund cannot be placed by the State Auditor and State Treasurer in the General State Road Fund.

6. ————: ————: General State Road Fund: Distribution. The whole of the General State Road Fund for a given year cannot be distributed among the various counties unless all have constructed the permanent roads called for by the act. The act means that no money can be distributed until (1) an approved requisition has been made by a county, and (2) then only in proportion to the assessed valuation of property in the county, and (3) in no case can a county have more than three per cent of the whole fund. All the money remaining, after the counties complying with the act have drawn out their statutory share, at the end of two years is subject to a new aggregation and distribution.

## Mandamus.

WRIT DENIED.

*Clarence Baxter, W. H. Barnett,* and *Irwin & Peters* for relator.

(1) The Stamp Act fund provided by section 10229, chapter 91, Revised Statutes 1909, is now a part of the General State Road Fund provided for by article 5 of chapter 121, Revised Statutes 1909, and is to be distributed according to said Act. of 1909, because said Act of 1909 providing for a general State road fund and as to how it shall be apportioned and distributed, being later in time and inconsistent with that portion of the Stamp Act passed in 1907, provided for in chapter 91, repeals that portion of said Stamp Act fund in so far as it relates to the manner of distribution. Hence the said Stamp Act fund must be brought into the general State road fund under the provisions of article 5, ch. 129, and distributed as therein provided. Sec. 11914, art. 5, ch. 121, being laws 1909, p. 768. This section is broad and all-inclusive and includes all money, however derived, for the improvement of public roads, and that part of section 10229, Revised Statutes relating to the Stamp Act fund, which provides that the same shall be distributed in like manner as State school funds are now distributed, is repealed by implication, as it is absolutely inconsistent with the latter provision relative to the general State road fund, which provides the same to be apportioned to certain counties. in proportion to the assessed valuation of properties therein. The General State Road Fund Act creates no fund; but only consolidates all other funds and directs that they shall be credited to the general State road fund and directs its method of distribution to certain counties in proportion to the assessed valuation. And as this later act is inconsistent with a prior act as to the method of distribution, this prior Stamp Act is repealed in so far as it is in conflict with the late act. 7 Words & Phrases, pp. 65 to 84; Hingle v. State, 24 Ind. 34; Railroad v. Nordyke, 27 Ind. 95; Black on

Gasconade County v. Gordon.

Interpretation of Laws, p. 118; Endlich on Interpretation of Statues, p. 308, sec. 230; State v. Giverance, 55 Mo. 378; State v. Bennett, 102 Mo. 356; Railroad v. Cudmore, 103 Mo. 634. (2) The entire fund must be paid to the counties that have done work or provided a fund for making road improvements, and the counties that have not provided any fund for such improvement and have in no way availed themselves of the benefit of this State Road Fund Law cannot participate in this distribuion, but can only participate in the distribution of funds arising or being on hand after they have seen fit to avail themselves of the law by appropriating funds for improving the roads in their counties. Sec. 11916, R. S. 1909. (3) A subsequent statute which is clearly repugnant to a prior one necessarily repeals the former, though it does not do so in express terms. State ex rel. v. McDonald, 38 Mo. 529; Mauker v. Faulhaber, 94 Mo. 440; State ex rel. v. Clark, 54 Mo. 216. Nor is it necessary that the subsequent general law should express words of repeal, as any form of exceptions showing a clear intention to repeal a special law will be sufficient. Railroad v. Shambaugh, 106 Mo. 557; State v. Daley, 49 Mo. 184; State ex rel. v. School Board, 131 Mo. 505; 2 Sutherland on Stat. Const., sec. 443; United States v. Freeman, 3 How. 550; Converse v. United States, 21 How. 463; State v. Clark, 54 Mo. 216; Bryson v. Johnson Co., 100 Mo. 85. A general statute will repeal a special statute where they are so inconsistent that they can not stand together. Railroad v. Cudmore, 103 Mo. 634; State v. Bennett, 102 Mo 356; State ex rel. v. Frazier, 98 Mo. 426.

*Elliott W. Major*, Attorney-General, and *Charles G. Revelle*, Assistant Attorney-General for respondents.

(1) The Act of 1907 creating a special "Road Fund," and the act of the same session creating a "General State Road Fund," relate to separate ob-

jects and subjects and are not in conflict. Laws 1907, p. 373; sec 91, R. S. 1909; McFarlane v. Railroad, 175 Mo. 422; State ex rel. v. Henderson, 160 Mo. 208; State v. Swaggerty, 203 Mo. 527; Hamilton v. Court, 15 Mo. 20; Court v. Griswold, 58 Mo. 175; Bevier v. Watson, 113 Mo. App. 511. Between the Stamp Act, expressly creating a special fund for its incidental proceeds, and providing that each county in the State shall unconditionally and equally with all others, share the benefits thereof, and the other general act creating a general fund derived from general and certain other specific sources and limiting its benefits to certain counties and purposes, there is not, according to fundamental canons of construction, any inconsistency or conflict. (2) If there is a conflict between the general and special act, it is an approved rule of construction that if a special provision, applicable to a particular subject, be inconsistent with a general law, the special will prevail. State v. De Bar, 58 Mo. 395; State v. Green, 87 Mo. 587; State ex rel. v. Foster, 187 Mo. 610; Ackerman v. Green, 201 Mo. 244; 36 Cyc. 1151. Or otherwise expressed, the rule is that, where two provisions, one of which is special and particular and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter, and thus conflict with the special act or provision, especially when such general and special acts or provisions are contemporaneous, the special act must be taken as intended to constitute an exception to the general act or provision. Ruschenberg v. Railroad, 161 Mo. 70; State ex rel. v. Hostetter, 137 Mo. 636; State ex inf. v. Dabbs, 182 Mo. 366; Jaicks v. Merrill, 201 Mo. 106; State v. Bryant, 90 Mo. 535; Assn. v. Delano, 108 Mo. 217; Ex parte Neet, 157 Mo. 533. (3) The Act of 1909 did not operate to repeal any part of the Stamp Act. If both acts can, by any reasonable construction, be construed together, both will be sustained. Evans v. McFarland, 186 Mo. 723; State ex

rel. v. Wells, 210 Mo. 620; McGrew v. Railroad, 177 Mo. 542; Manker v. Faulhaber, 94 Mo. 430; State ex rel. v. Walbridge, 119 Mo. 383. This construction is peculiarly applicable when the prior enactment is a special law and the latter a general one. State ex rel. v. Slover, 134 Mo. 19; State ex rel. v. Dabbs, 182 Mo. 359; McVey v. McVey, 51 Mo. 420; State ex rel. v. Convent, 116 Mo. 580. Furthermore, it is necessary to a repeal by implication that the objects of the two statutes be the same. If they are not, both statutes will stand, although they may refer to the same subject. 36 Cyc. 1077; State v. Shour, 196 Mo. 202; State ex rel. v. Wilder, 199 Mo. 487; State v. Clarkson, 59 Mo. 152; State v. Noland, 111 Mo. 501. These titles are of value in determining the scope and meaning of the acts themselves. State ex rel. v. Fort, 210 Mo. 527; Cytron v. Transit Co., 205 Mo. 699. It is quite clear that if the Act of 1909 had the effect of repealing that part of the Stamp Act which creates a special fund and provides its own method of distribution, it also operated to repeal, for the same reasons, the act pertaining to the Road and Canal Fund. That the Act of 1909 was not a revision of the whole subject-matter and did not repeal any part of the Stamp Act seems too clear to warrant discussion. State xe rel. v. Patterson, 207 Mo. 129. (4) By subsequent legislation the force and existence of both statutes and funds are recognized. A construction of a statute by the Legislature, as indicated by the language of subsequent enactments, is entitled to great weight. 36 Cyc. 1142, 1146; State ex rel. v. Gordon, 197 Mo. 62; Railroad v. Shacklett, 30 Mo. 557; State v. Pitts, 51 Mo. 135. State v. Bengsch, 170 Mo. 108; Laws 1911, sec. 68, p. 19; Laws 1911, sec. 26 p. 10; State ex rel. v. Gordon, 197 Mo. 62.

GRAVES, J.—The county of Gasconade, as relator, by its petition for mandamus (averring and showing a special interest in the subject-matter of the suit),

seeks to compel the State Auditor and the State treasurer to place certain funds arising from the sale of stamps under the provisions of chapter 91, Revised Statutes 1909, into what is denominated the "General State Road Fund," a fund created by section 11914 of article 5, chapter 121, Revised Statutes 1909. Said county also seeks to compel the said respondents to place in the same fund a certain other road fund which arises from licenses upon motor vehicles. Nor is relator content with these demands, but it seeks further to have these funds when thus assembled paid out only to such counties of the State as may have appropriated funds from their treasury for the permanent improvement of public roads, rather than to all the counties of the State.

Respondents concede that the motor vehicle fund should go to the "General State Road Fund," and in their return aver that it has been placed there, and that relator has received its proportionate part thereof under their construction of the provisions of article 5, chapter 121, Revised Statutes 1909. Respondents deny that the Stamp Act fund belongs to the "General State Road Fund." They also say that whilst they would be glad to pay out the motor vehicle fund, now in the "General State Road Fund," in the manner suggested in the petition of relator, yet other counties in the State are demanding their proportionate part thereof, and for that reason they ask a construction of this law by the court.

It should be noted that the relator sues for itself and some twenty-two other counties in like situation. Relator and these other counties, in the petition named, had before July 1, 1911, appropriated funds from their respective treasuries for the permanent improvement of roads under the provisions of article 5, chapter 121, Revised Statutes 1909. Petitioner had appropriated $1000 and claims to be entitled to $1000

from this "General State Road Fund," under the provisions of the law aforesaid.

The real contentions are two in number. First, over the disposition to be made of the Stamp Act fund, and, second, how the "General State Road Fund" should be distributed.

Both petition and return are voluminous, abounding in conclusions of law. The facts fall within small compass, and as the case stands before us upon a motion for judgment on the pleadings, the facts well pleaded in the return are the facts of the case. Under the facts respondents have not put the funds arising from the sale of stamps by virtue of the provisions of law for such sale, as found in chapter 91, Revised Statutes 1909, into the "General State Road Fund," nor have they paid out the motor vehicle fund after placing it in such "General State Road Fund" in the manner urged by relator. This sufficiently states the case for a discussion of the two or three legal questions involved.

I. The first question is, what shall be done with the money arising from the sale of stamps under the provisions of chapter 91, Revised Statutes 1909? Our statutes speak of the following road funds: (1) "Good Road Fund," Laws of 1911, p. 331, sec. 13; (2) "General State Road Fund," section 11914, chapter 121, Revised Statutes 1909; (3) "Road Fund," section 10229, chapter 91, Revised Statutes 1909, and (4) "The Road and Canal Fund," article 4, chapter 121, Revised Statutes 1909.

The first named is the motor vehicle fund, and the section of the law reads: "The registration fees provided herein shall be paid by the Secretary of State into the State Treasury, and shall be for the benefit of the 'good roads fund.'"

The second fund is thus created by section 11914, Revised Statutes 1909: There is hereby created and

established in connection with the State treasury, a fund to be known as 'the general state road fund,' and all moneys accruing to the State from any general or special levy of taxes for road purposes, or from any other source whatever, or derived in any way for the improvement or construction of public roads, shall be credited to such general State road fund.''

The third is the Stamp Act, and the ''road fund'' therein created had its birth in this language, as *found* in sections 10229, Revised Statutes 1909: ''The fund arising from the sale of the stamps provided for in section 10228 of this chapter shall, in the hands of the State Auditor, constitute a road fund; and it shall be the duty of the said Auditor to distribute said fund, annually, to the counties in the State and the city of St. Louis, in the same proportion and in like manner as the State school funds are now distributed by him.''

The fourth is a fund of long standing in this State, and the language of its creation is now found in section 11906, Revised Statutes 1909, which section reads: ''The money received on the account aforesaid shall constitute a separate fund, to be called the 'road and canal fund,' and shall be managed, stated and accounted for separately from the general revenues of the State.''

The Act of 1911, which is the motor vehicle act, makes no specific provisions for its distribution, and whilst the style of the fund as described in the act is not just the same, it is evident to my mind that the purpose of the act was to place this fund in the ''General State Road Fund,'' a fund having its existence since the Act of 1907. This the Auditor and Treasurer have done.

The distribution of the ''General State Road Fund'' is provided for by sections 11915 to 11918, Revised Statutes 1909, inclusive. These sections read:

241 Mo.—37

"Sec. 11915. The money credited to the general State road fund shall be expended in the construction of permanent or continuing improvements of roads and highways in the State of Missouri, and for no other purpose whatever; and such fund shall be appropriated for use by act of the General Assembly from time to time in the manner hereinafter provided. The words 'permanent or continuing improvements' are hereby defined to be the surfacing of any road with gravel and rock, or with a well constructed mixture of sand and earthy material, commonly termed a 'sand-clay road,' any grading of the road and construction of concrete or masonry culverts, or any and all of the above defined improvements which shall be kept up without intermission. Wherever hereinafter in this article are used the terms 'county,' or 'districts,' or 'city of St. Louis,' the same shall be defined · as any county, regular or special district, township and city of St. Louis. Plans for such improvements or construction under this article shall be approved by the county court of such county, and shall be attached to the requisition made on the State Auditor, and any and all such improvements or construction costing not less than one thousand dollars per mile of road or not less than five hundred dollars per culvert shall, in addition, be approved by the state highway engineer.

"Sec. 11916. The general State road fund shall be apportioned and distributed to the several counties and the city of St. Louis, and used therein for the purpose of aiding in the construction of the permanent improvements of the public roads therein when the several counties or districts thereof, or the city of St. Louis, or the citizens in such counties, districts or city of St. Louis, may provide the necessary funds to pay for at least one-half of the cost of such construction or permanent improvements; and in providing the necessary funds to pay for the one-half of the costs of such construction and improvements afore-

said, the citizens may pay one-fourth thereof and the counties or districts or city of St. Louis may pay the remaining one-fourth. When the citizens and county or district or city of St. Louis have provided one-half of the necessary funds for such construction and improvements as aforesaid, then the county courts or properly constituted authorities of the districts or the municipal assembly of the city of St. Louis, shall, by the proper order of ordinance, make a requisition for their proportionate share of the general State road fund each year, and shall be entitled to withdraw and receive the same in the manner herein provided on furnishing the proper evidence of the nature of the improvements proposed, and on showing that the county, district or city of St. Louis and the citizens of such county, district or city, have provided and set apart in the depositary of the county, district or city of St. Louis the funds for the payment of at least one-half of the cost of such construction or improvements: Provided, the proportionate share so drawn from the general State road fund shall be used and expended for the sole purpose for which it was so drawn, and shall be used in paying the other one-half of the costs of such construction or permanent improvements or so much thereof as the proportionate part going to said county or district or city of St. Louis may discharge.

"Sec. 11917. The general State road fund shall be apportioned and distributed to the several counties, districts and the city of St. Louis in proportion to the assessed valuation of properties therein for the purpose of taxation: Provided, however, that no county, district or city shall be entitled to have or receive from such fund in any one year more than an amount equal to three per cent of the total amount belonging to the general State road fund available for use in that year. The requisition of the several counties or districts and the city of St. Louis shall be made on the

State Auditor on or before the first day of July of each year, and all parts of such fund not applied for by such requisitions of the counties, districts or the city of St. Louis shall after two years revert to and remain in the general State road fund, and be subject to future apportionment and distribution as a part of such fund. And the State Auditor shall issue the proper voucher and warrant on the State Treasurer upon being furnished with satisfactory evidence and by the orders aforesaid that not less than one-half the cost has been provided for by the county, district, city of St. Louis and the citizens of such county, district or city.

"Sec. 11918. No part of the general State road fund shall be used to pay for rights of way or for lands on which to construct such roads, nor for payment of any damages or losses to the owners of abutting property, or to any one claiming to be specially injured by reason of the location, construction or improvement of such public road for which application may be made for any of said fund."

The third is the Stamp Act fund and the statute creating the fund as above quoted, provides for its distribution.

The distribution of the "road and canal fund," is provided for by section 11908, Revised Statutes 1909, which section reads: "Until otherwise provided by law, the road and canal fund shall be equally divided annually among the several counties in this State."

The first three funds named, being all except the "road and canal fund," had their origin in three separate acts of the Legislature in 1907. The chronological history of the acts is thus stated in relator's brief:

"Automobile Law: Introduced in House January 10; passed House March 4th; reached Senate March 5th; passed Senate March 13th; signed by Governor March 19th.

"Stamp Act: Introduced in Senate January 14th; passed Senate February 11th; reached House February 12th; passed House February 22nd; signed by Governor March 8th.

"General State Road Fund: Introduced in Senate February 5th; passed Senate February 8th; reached House March 1st; passed House March 6th; signed by Governor March 30th."

From this brief history of the origin of the funds and the law of their distribution we can intelligently discuss the question presented, i. e., should the money arising from the sale of stamps go into the "General State Road Fund?"

So far as the subject of roads is concerned these three several acts are statutes *in pari materia*. They were passed at the same term of the Legislature. There is no express repeal of one by the other. Under such circumstances what are the rules of construction?

In 36 Cyc. 1151, the general rule is thus announced: "The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes passed at the same session of the Legislature; it is to be presumed that such acts are imbued with the same spirit and actuated by the same policy, and they are to be construed together as if parts of the same act. They should be so construed, if possible, as to harmonize, and force and effect should be given to the provisions of each; if, however, they are necessarily inconsistent, a statute which deals with the common subject-matter in a minute and particular way will prevail over one of a more general nature; and of two inconsistent statutes enacted at the same session, that will prevail which takes effect at the later date."

SMITH, P. J., has well summarized the holdings in this State in the case of Lang v. Calloway, 68 Mo. App. l. c. 396, in this language:

"It thus appears that there was passed at the same session of the Legislature two separate acts amending said section 3318 without any reference of the one to the other. The question is, what effect did the enactment of the latter have on the former?

"It is a rule of construction that where two inconsistent acts, relating to the same subject-matter, are passed during the same session of the Legislature, the last passed in the order of time, by necessary implication, repeals the first. [State ex rel. v. Heidorn, 74 Mo. 410.] While repugnant statutes must necessarily supplant previous ones, they must be clearly repugnant, for, unless the legislative intent is expressed in terms, it will not be assumed, if any other construction can be given to the subsequent act. [State ex rel. v. Draper, 47 Mo. 29.] It is a fair presumption that if the Legislature intends to repeal a statute, it will do so in express terms, or by the use of words which are equivalent to an express repeal; and the court will not, if it can be consistently avoided, adjudge that a statute is repealed by implication. [State ex rel. v. County Court, 41 Mo. 453.]

"But there is also another rule of pertinent application here which is, that where two acts are passed at the same session of the Legislature, relating to the same subject-matter, as here, they are *in pari materia,* and to arrive at the true legislative intent, they must be construed together. [Corry v. Ridge, 56 Mo. App. 615; State ex rel. v. Clark, 54 Mo. 216; State ex rel. v. Klein, 116 Mo. 259; St. Louis v. Howard, 119 Mo. 41.] The law does not favor repeals by implication. If by any fair interpretation all the sections of a statute can stand together, there is no repeal by implication."

In Black on Interpretation of Laws, in speaking of statutes *in pari materia,* it is said:

"Especially is it the rule that different legislative enactments passed upon the same day or at the same

session, and relating to the same subject, are to be read as parts of the same act."     .

To like effect is Lewis's Sutherland on Statutory Construction, vol. 2, page 845 (2 Ed.), whereat it is said: "It is observed that in the comparison of different statutes passed at the same session or nearly at the same time this circumstance has weight; for it is usually referred to as indicating the prevalence of the same legislative purpose, as rendering it unlikely that any marked contrariety was intended."

It is easy to see why the rule of construction pertaining to statutes *in pari materia* applies with peculiar force to statutes passed at the same session of a legislative body. In such case we have in fact the same minds acting upon the one subject. It is not to be presumed that the same body of men would pass conflicting and incongruous acts. The presumption is, that they had in mind the whole subject under consideration; that whilst the one general subject is touched in several separate acts, yet the legislative intent was that of a harmonious whole. In such case, it is the duty of the courts to so construe all the acts in such manner that each and every part thereof may stand, if such construction can be attained, without doing violence to the language used in the several acts.

We take it that there can be no serious question as to these rules of construction. Under them, can these two acts (the Stamp Act and the "General State Road Fund" Act) stand as written? If they are absolutely inconsistent and repugnant, then of course the latter prevails and the former falls. But is such the case? We think not. In our judgment, both can stand. The Legislature was dealing with the question of funds to be used upon public roads. By the statute the Stamp Act fund goes to all counties in the State and is apportioned as are school moneys. Such funds may be used by the counties for all legitimate road

purposes. If the counties desired their dirt roads dragged and drained this fund could be used. If small wooden culverts are to be erected, this fund could be used. In fact it can be used for any of the purposes for which county road funds can be used. Not so with the "General State Road Fund." By statute this fund must be used "in the construction of permanent or continuing improvements . . . and for no other purpose whatever." The law does not stop here. There was fear that it might be misconstrued and the funds applied to some of the smaller things covered by the county road laws. The Legislature in the same section proceeds to define "permanent or continuing improvements." It says, "The words 'permanent or continuing improvements' are hereby defined to be the surfacing of any road with gravel and rock, or with a well constructed mixture of sand and earthy material, commonly termed a 'sandy clay road,' and grading of the road and the construction of concrete or masonry culverts, or any and all of the above defined improvements which shall be kept up without intermission." Everything is of a permanent character and must be kept up without intermission. It does not apply to the great class of road work done on many of the minor public roads in the divers counties. Later and lastly the section says the plans must be approved by the county court and by the State Highway Engineer, again showing that it has no reference to the usual and ordinary work done upon the various public roads in the different counties.

By section 11916, no part of this fund can be used by a county until the county has made provision for half of the expense of the proposed improvement. The method of distribution is different. In this law the taxable valuation of the counties is taken as a basis. Lastly no part of this fund can be used for road rights-of-way or damages to abutting property owners.

In other words, the two acts cover different fields of road work. The one was intended to aid all the counties in doing the usual and ordinary road work, and the other intended to aid in the construction of permanent and lasting improvements. The latter really supplements the former. It provides aid in a work not specially contemplated by the former. Both laws apply to the one general subject, i· e., State aid in road work, but they occupy different fields, It is not unreasonable to believe that the Legislature had in mind the granting of aid to the counties in their road work by different funds. It is not unreasonable to believe that such body thought that there should be one fund the proceeds of which could be used just as the county funds are usually used, and another and distinct fund which should be used just as the "General State Road Fund" is used. Both funds grant State aid in road work, but in different fields and phases of that work. The two statutes are not necessarily inconsistent and repugnant, and this being so, our duty is to permit both to stand. Repeals by implication are not favored by the law. If upon any reasonable ground a construction can be given which will permit both acts to stand, such must be done. Such a construction can be given in this case. The "road fund" created by the Stamp Act is one which goes to the counties to be by them used just as county road funds are used. The "General State Road Fund" act sufficiently speaks for itself as to the character of work which can be done out of that fund. Both acts can stand, and yet leave one harmonious whole as to State aid in road work.

In the above discussion we have taken the law pertaining to the "General State Road Fund" as enacted in 1909, rather than the original act of 1907. In 1909, the whole Act of 1907 was repealed, and a new act passed in lieu thereof. The first and fifth sections are just the same, but the other three sections were

made more specific in details, but they cover the exact subject-matter, so that the intent of the one act can be fully gathered from the other.

II. That the two acts were intended to create separate funds seems to have been fully recognized by the General Assembly. At the last session an appropriation was made out of such fund in this language:

"There is hereby appropriated out of any money in the State treasury, belonging to the 'road fund' —Stamp Act—the sum of one thousand dollars, to be used by the State Auditor to purchase stamps as provided for by an act approved March 1, 1907, concerning the sale and future delivery of grain and other commodities; also, the sum of three thousand six hundred dollars, to pay the salary of a special clerk and two thousand dollars for traveling and incidental expenses in connection with enforcing said law; in all a total of six thousand six hundred dollars." [Laws 1911, sec. 68, p. 19.]

It will be noticed that they designate it as the "road fund," so as to distinguish it from the "general State road fund."

At the same time and from the same fund there was an appropriation of $500,000, to be distributed to the different counties as are the State school moneys, but this act never became effective owing to a veto from the Governor.

Again House Bill No. 254, introduced by Mr. Tuggle, provided for the repeal of section 10229 and the enactment of a new section in lieu thereof. This new section provided that the Stamp Act fund should be placed in the "General State Road Fund." This bill was reported from the committee and was duly engrossed, but was never reached on the calendar. [House Journal 1911, p 310.]

So that it is quite clear that the Legislature has throughout recognized that there were two distinct funds for separate and distinct purposes.

But in addition to this, if the contention of relator is correct the "road and canal fund" would likewise go to the "General State Road Fund," and its method of distribution be entirely changed. The Legislature has never so thought. Four years after the creation of the "General State Road Fund" we find that the Legislature treated the "road and canal fund" as it had always heretofore done. It appropriated $15,000 therefrom to be distributed to all the counties in equal amounts. [See Laws 1911, p. 10, sec. 26.]

The legislative idea therefore confirms our views of the question. We therefore hold that the writ should be denied in so far as it is sought to compel respondents to place the funds arising from the Stamp Act in the "General State Road Fund." Let this be done in an orderly way by express legislative action. However much we may desire rock or gravel roads we can not violate the plain mandates of ordinary rules of statutory construction, and do for the State by way of judicial legislation that which the Legislature has not done, and it would seem has no intention of doing.

III. As indicated above we hold that the motor vehicle fund should go to the "General State Road Fund" because there is no specific directions for its distribution otherwise. We also hold that without further legislation the Stamp Act fund cannot be placed in the "General State Road Fund." It only remains, therefore, to ascertain just how and to what counties the "General State Road Fund" should be distributed. Respondents ask the court to apply this fund as relator contends that it should be applied, if under the peculiar provisions of the law such can be

done. The uncertainty is created by the first clause of section 11917, supra, but we think this is cleared up in a measure by the proviso which follows it, when taken with the preceding section.

We would be indeed glad to give this article 5 of chapter 121, the construction asked for by relator, if such were possible under the language used, but to our mind the language used is not susceptible of that construction.

To get a bird's-eye view of the situation, we shall take the two sections relating to the distribution of the funds and eliminate all portions thereof which tend to lengthen and confuse. After such elimination, section 11916 will read:

"The general State road fund shall be apportioned and distributed to the several counties . . . when the several counties . . . may provide the necessary funds to pay for at least one-half of the cost of such construction or permanent improvement; . . . when the citizens and county . . . have provided one-half of the necessary funds for such construction and improvements as aforesaid, then the county courts . . . shall, by the proper order . . . make a requisition for their proportionate share of the general state road fund each year, and shall be entitled to withdraw and receive the same in the manner herein provided on furnishing the proper evidence of the nature of the improvements proposed, and on showing that the county . . . has provided and set apart in the depositary of the county . . . the funds for the payment of at least one-half of the cost of such construction or improvements."

To this is attached a proviso which requires that the State money be used only for the payment of the remaining one-half of any proposed improvement, "or so much thereof as the proportionate part going to said county . . . may discharge."

Section 11917, when thus culled out, would read:

"The general State road fund shall be apportioned and distributed to the several counties . . . in proportion to the assessed valuation of properties therein for the purpose of taxation: *Provided however* that no county . . . shall be entitled to have or receive from such funds in any one year more than an amount equal to three per cent of the total amount belonging to the general State road fund available for use in that year. The requisition of the several counties . . . shall be made on the State Auditor on or before the first day of July of each year, *and all parts of such fund not applied for by such requisitions of the counties . . . shall after two years revert to and remain in the general State road fund, and be subject to future apportionments and distribution as a part of such fund.* And the State Auditor shall issue the proper voucher and warrant on the State Treasurer upon being furnished with *satisfactory evidence and by the orders aforesaid,* that not less than one-half the cost *has been provided for* by the county, district, city of St. Louis and the citizens of such county, district or city."

Throughout these sections speak of counties, districts and the city of St. Louis, as well as further details, but with the exception of the last lines above we have eliminated those so as to simplify the sections. In section 11917 we have underscored some clauses which absolutely take the vitals from relator's contention to the effect that the whole fund for the given year should be divided among the counties which have made requisitions upon the Auditor, rather than among all the counties and the city of St. Louis according to the valuation of property for taxation. It must be noted that, throughout, these requisitions to participate in this fund must be based upon *proposed* improvements, and must be accompanied by evidence that the county or the citizens thereof have deposited

in the county depositary one-half of such proposed improvements. These requisitions must be made on or before the first day of July each year, but "all parts of such fund not applied for by such requisitions to the counties . . . *shall after two years revert to and remain in the general State road fund*," etc. When we take this provision and read it along with the first clause of said section 11917, "The general State road fund shall be apportioned and distributed to the several counties, districts and the city of St. Louis in proportion to the assessed valuation of properties therein for the purpose of taxation," the legislative intent is clear. This legislative intent is (1) that no money shall actually be distributed from this fund until requisitions are made and these requisitions sustained by proper proof; (2) that the apportionment and distribution spoken of in the law is one simply upon the books of the Auditor and Treasurer and not an absolute apportionment and distribution in the sense of actually paying the money over to the counties; (3) that on the books of the Auditor and Treasurer the funds should be distributed to all the counties in proportion to their taxable valuation but in no case shall the amount distributed on the books to the city of St. Louis or to any one county exceed three per cent of the whole fund for the given year; and (4) if the city of St. Louis or any county fail to make requisition for its part of the fund, then "all parts of such fund not applied for by such requisitions of the counties, etc., shall after two years revert to and remain in the General State Road Fund, and be subject to future apportionment and distribution as a part of such fund."

The Legislature evidently thought that all of the counties would not act at once, and hence after authorizing the distribution to all, it provided for the unclaimed fund so distributed, after two years, to revert back to the original fund and be again redistribu-

ted with the accumulations. The Legislature thought that large counties and the city of St. Louis might get much of these funds and hence limited their requisitions to three per cent of the total fund available for the year. Owing to large assessed valuations, their proportionate part might be larger than three per cent of the total, and if so then it must be cut down to not exceed that amount. The fact that the Legislature provided for the unclaimed portions to revert makes it clear that the distribution in the first instance must be to all the counties and the city of St. Louis. The term districts therein used has reference to road districts in the counties, and what they receive must be from the proportionate part due the given counties.

There is no other construction of these statutes which will give full effect to all the language used therein. This is the construction which the auditor and treasurer have tentatively placed thereon, but which they ask us to obviate if we can. The language of the law will not permit us to so do. When properly studied the legislative intent becomes as plain as the light of day. The funds are to be distributed on the books to all the counties and the city of St. Louis in the manner above discussed. If certain parts are not claimed by proper requisitions from the counties, then in two years such parts revert and remain in the "General State Road Fund." The use of the words "remain in" show that it is only a book apportionment which is contemplated. In fact the whole act so shows. These views are against the contention of the relator and the other counties so situated, but they give life to the full act and must prevail.

It follows, therefore, that the peremptory writ must be denied under the law, however strong our inclinations to give relator and these other counties the relief sought. Let the writ be denied. *Valliant, C. J., Woodson,* and *Ferriss, JJ.,* concur.

*Lamm, Kennish* and *Brown, JJ.,* dissent.