LAURA C. HULL, Appellant, v. WILLIAM F. BAUMANN, Collector of Revenue of the City of St. Louis.—131 S. W. (2d) 721.

Division Two, September 21, 1939.

*McDonald, Bartlett & Muldoon* for appellant.

*James A. Waechter* and *Donald Gunn* for respondent; *Edgar H. Wayman* and *Andrew J. Reis* of counsel.

TIPTON, J.—Appellant seeks to enjoin the respondent from proceeding by suit under the provisions of House Bill 677 of the Sixtieth General Assembly to collect delinquent tax bills charged against her property located in St. Louis, Missouri, for the years 1934, 1935, 1936, 1937 and 1938, and for interest, costs and attorneys' fees thereon. After hearing the case upon its merits, the trial court entered its judgment dismissing appellant's petition and denying the injunction prayed. From that judgment, the appellant has duly appealed to this court.

Appellant contends that House Bill 677 is unconstitutional for the reason that the title to this bill violates Section 28, Article IV of our Constitution, which reads: ''No bill . . . shall contain more than one subject, which shall be clearly expressed in its title.''

House Bill 677 applies only to counties or cities not in a county which now have or may hereafter have in excess of 700,000 inhabitants, and to counties which now have or may hereafter have not less than 200,000 and not more than 400,000 inhabitants. Among other things, it provides that back taxes against real estate shall be enforced by suit brought in any court of competent jurisdiction, and it also provides for costs and attorneys' fees. This bill amends what is known as the Jones-Munger Law, Laws 1933, page 425.

Under the Jones-Munger Law, delinquent liens for taxes on real estate were not enforced by a suit brought in court, but, instead, the land was advertised and sold by the county collector who gave a certificate of purchase.

The title to House Bill 677 is as follows: ''To amend an act of the Fifty-Seventh General Assembly appearing in Laws of Missouri, General Session, 1933, pages 425 to 449, inclusive entitled (here is copied the title to the Jones-Munger Law, relating to delinquent and back taxes) by enacting eighteen new sections to be known as Sections 9952 A-1, 9952 A-2, 9952 A-3, 9952 A-4; 9952 A-5, 9952 A-6, 9952 A-7, 9952 A-8, 9952 A-9, 9952 A-10, 9952 A-11, 9952 A-12, 9952 A-13, 9952 A-14, 9952 A-15, 9952 A-16, 9952 A-17, 9952 A-18, relating to the same subject matter and applying to counties and cities not

within a county which may now have or may hereafter have a population in excess of 700,000 inhabitants and to counties which now have or may hereafter have not less than 200,000 and not more than 400,000 inhabitants, and repealing all conflicting acts and parts of acts with an emergency clause and declaring this to be a revision bill.''

In the case of State ex inf. Crain v. Moore, 339 Mo. 492, l. c. 495, 99 S. W. (2d) 17, we said:

''The legislative title shows the act is one to repeal ten named sections of the Revised Statutes of 1929, relating to recorder of deeds, and to enact in lieu thereof seven new sections pertaining to the same subject. This was sufficient.''

Again, in the case of State ex rel. Consolidated School Dist. No. 3 v. Miller, 326 Mo. 830, 33 S. W. (2d) 122, l. c. 124, we said:

''The title to the amendatory act designated it as an amendment to the act of 1913. The mere reference to an act or a section by the title of the amending act is sufficient, without other description of the subject-matter. It is sufficient that the act deal exclusively with the subject-matter of the act amended.''

[See, also, Brown v. State, 323 Mo. 138, 19 S. W. (2d) 12; State ex rel. Webster Groves Sanitary Sewer Dist. v. Smith, 337 Mo. 855, 87 S. W. (2d) 147.]

So, we see the title to the act is general, dealing with ''delinquent taxes,'' that it is an amendment to the Jones-Munger Act, and that each section of House Bill 677 deals exclusively with the subject-matter of that act. This is sufficient. We rule this point against the appellant.

The appellant next contends that House Bill 677 is a local and special law in regard to the collection of delinquent taxes and is, therefore, repugnant to Section 53, Article IV and Section 3, Article X of our Constitution for the reason that it applies only to the city of St. Louis and St. Louis County. At the present time this is true, because the city of St. Louis is the only city in this State not within a county which now has a population in excess of 700,000, and St. Louis County is the only county which now has a population of not less than 200,000 and not more than 400,000. By its terms, the act applies to all ''counties and cities not within a county which may now have or may hereafter have a population in excess of 700,000 inhabitants and to counties which now have or may hereafter have not less than 200,000 and not more than 400,000 inhabitants.''

The classification of counties or cities according to population so that other counties and cities may come within the terms of the law in the future does not make the act a special law in violation of our Constitution, although such act applies only to one county or one city in the State at the time of its enactment because the population thereof is the only one within the limits fixed by the act at the time

of its passage. [State ex rel. Zoological Board v. St. Louis, 318 Mo. 910, 1 S. W. (2d) 1021; State ex rel. Hollaway v. Knight, 323 Mo. 1241, 21 S. W. (2d) 767; State ex rel. Webster Groves Sanitary Dist. v. Smith, supra; State ex rel. Crain v. Moore, supra.]

The appellant contends that the above does not apply because the city of St. Louis is the only city in the State not within a county and, therefore, in the future there can never be a city, not within a county, which has in excess of 700,000 inhabitants. We think the appellant overlooks the fact that the act applies to counties which have or may hereafter have in excess of 700,000 inhabitants as well as to cities not within a county which have in excess of 700,000 inhabitants. It is certainly possible in the future that we may have a county in this State that may come within the provisions of this act by virtue of its having in excess of 700,000 inhabitants. We think this fact makes the act a general and not a special law. This act deals with the collection of delinquent taxes on real estate. The collection of taxes on real estate has been delegated to the various counties of this State. While it is true the city of St. Louis is a city, yet it performs many functions that are performed by a county. For instance, it has a collector, assessor, recorder and sheriff, the same as all the counties of this State. In so far as its classification is concerned, the act is a general and not a special law.

"But a law general so far as population is concerned may be a special law if the classification made therein is unnatural, unreasonable, and arbitrary so that the act does not apply to all persons, objects, or places similarly situated. [State ex rel. Saline County v. Wilson, 288 Mo. 315, 232 S. W. 140.]" [State ex rel. Hollaway v. Knight, supra, 323 Mo. 1241, 21 S. W. (2d) 767, l. c. 769.]

This case was tried below upon an agreed statement of facts, which statement in reference to the sale of real estate under the Jones-Munger Law is as follows:

"That the percentage of sales to private parties in the City of St. Louis and St. Louis County are approximately 2 per cent and 8 per cent, respectively, whereas the average percentage for the other counties listed is 38 per cent.

"It is further agreed that the City of St. Louis was required to invest, and did invest, the sum of one hundred ninety-nine thousand four hundred fifty-four dollars and two cents ($199,454.02) at the sales held in the City of St. Louis under the Jones-Munger Law in 1936, 1937 and 1938, for the purchase of property being offered for the third time and for which there was no other substantial bid; that the liens for State, city and school taxes against said property would have been lost if the said City of St. Louis had not so invested said sum; that said money was actually paid by said city and distributed to the tax units entitled thereto.

"It is further agreed that the general real estate markets in the City of St. Louis and St. Louis County vary to a great extent from the real estate markets in practically all of the other counties of the State, particularly counties rural or semi-rural in the following respects, among others, to-wit:

"1. That much property is bought and sold in the City of St. Louis and St. Louis County for the purpose of speculating for profit, whereas in rural and semi-rural areas property is purchased for use and habitation almost exclusively.

"2. That by reason of the facts contained in the preceding paragraph and for numerous other reasons there is a greater amount of trading, sale and resale of property located in the City of St. Louis and St. Louis County than in most of the other counties of the State.

"3. That for the most part vacant property in the City of St. Louis and St. Louis County has no value either inherently or for investment purposes unless said property is used for the purpose of erecting improvements thereon, and that it is, consequently, frequently necessary for the purchaser of vacant property to invest large sums of money, equal to many times of the cost of the real estate itself, for the erection of improvements before such property, vacant when purchased, has any distinct value as an investment, whereas in rural or semi-rural areas vacant property is usable without improvement and no additional investment over and above the cost of the original real estate is necessary in most instances to render said property an investment for the owner thereof.

"It is further agreed that by reason of the aforesaid differences contained in paragraphs 1, 2 and 3 there is a greater demand for the insuring of titles to real estate in the City of St. Louis and in St. Louis County than most of the other counties of the State; that because of the failure of the general law to provide any method for the obtaining of an adequate consideration at sales held under the Jones-Munger Law, the major title and title insurance companies of the City of St. Louis and St. Louis County have refused to insure the titles to property sold or purchased under the provisions of the Jones-Munger Law, and that such refusal more greatly affects the real estate market in the City of St. Louis and St. Louis County than a similar failure in other counties would affect the real estate market in said counties in the following particulars, to-wit:

"1. It effectually prevents and practically precludes the purchase of property at sales held under the provisions of the Jones-Munger Law.

"2. It effectually prevents and practically precludes the subsequent sale and transfer of property once sold under the provisions of the Jones-Munger Law.

"It is further agreed that because of certain provisions contained in House Bill No. 677 relative to and assuring court approval of the

price or consideration for sales held under the provisions of said House Bill No. 677, the major title and title insurance companies of the City of St. Louis and St. Louis County will insure titles passed and obtained by virtue of sales held pursuant to said House Bill No. 677.''

We think that the above-quoted facts show that there is a natural reasonable basis for the classification contained in House Bill 677. The Jones-Munger Law may work reasonably well in rural counties but, certainly, it does not function where our large centers of population are located.

■ ''The basis of sound legislative classification is similarity of situation or condition with respect to the feature which renders the law appropriate and applicable. A law may not include less than all who are similarly situated. If it does, it is special and, therefore, invalid, because it omits a part of those which in the nature of things the reason of the law includes.'' [State ex inf. Barrett v. Hedrick, 294 Mo. 21, 241 S. W. 402, 1. c. 420.]

The question then arises: Does this act apply to all similarly situated? The act does not apply to Jackson County which has a population in between St. Louis County and the City of St. Louis. It is argued that if there is a reason for the act to apply to St. Louis County and the City of St. Louis, then, by the same reasoning, it should apply to Jackson County because it is similarly situated, and that not to include Jackson County makes the law a special one.

The stipulation of facts in this case made no reference to Jackson County, but for the purpose of this case we will assume the same condition exists there as in St. Louis County and the City of St. Louis. In fact, we think this is more than a mere assumption; we think it is a fact, for the same General Assembly that passed House Bill 555, fourteen days later passed House Bill 677. The former bill is practically the same as the act under consideration but applies only to counties containing a city having not less than 200,000 and not more than 700,000 inhabitants.

In the case of State ex rel. Karbe v. Bader, 336 Mo. 259, 1. c. 268, 78 S. W. (2d) 835, we said:

''We think the applicable rule is, 'That where two acts are passed at the same session of the Legislature, relating to the same subject matter, as here, they are *in pari materia*, and, to arrive at the true legislative intent, they must be construed together. [Corry v. Ridge, 56 Mo. App. 615; State ex rel. v. Clark, 54 Mo. 216; State ex rel. v. Klein, 116 Mo. 259; St. Louis v. Howard, 119 Mo. 41.] The law does not favor repeals by implication. If by any fair interpretation all the sections of a statute can stand together, there is no repeal by implication.' [Gasconade County v. Gordon, 241 Mo. 569, 145 S. W. 1160.] The opinion in which case says further:

'' 'In Black on Interpretation of Laws, in speaking of statutes *in pari materia*, it is said: ''Especially is it the rule that different leg-

islative enactments passed upon the same day or at the same session, and relating to the same subject, are to be read as parts of the same act.' ' "

By construing House Bill 677 and House Bill 555 together, we see that the Legislature did include all of the persons who might reasonably be expected to fall within the classification made.

The class to be considered is not that of delinquent taxpayers, but, instead, of delinquent taxpayers residing in certain populous areas of the State; therefore, it is a reasonable classification and not an arbitrary one.

█ The appellant also contends that this act violates Section 1 of the Fourteenth Amendment to the Constitution of the United States, and Article II, Section 30, of our Constitution.

In the case of Hines v. Hook, 338 Mo. 114, l. c. 121, 89 S. W. (2d) 52, l. c. 56, we said:

"That part of the Fourteenth Amendment to the Federal Constitution reading as follows: 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws'—has been construed to prevent the enactment of State statutes which make any unreasonable or arbitrary discrimination between different persons or different classes of persons. [12 C. J. 1128; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679.] Neither the Federal Constitution or Section 53, Article 4, of the Missouri Constitution prevents the making of reasonable classifications of persons or things for the various purposes of legislation. [Andrus v. Fidelity Mut. Life Ins. Assn., 168 Mo. 151, l. c. 162, 67 S. W. 582; State ex inf. v. Standard Oil Co., 218 Mo. 1, l. c. 368, 116 S. W. 902.] If there is a reasonable ground for the classification and the law operates equally on all within the same class, it is valid. [12 C. J. 1128; State ex inf. v. Standard Oil Co., supra, 218 Mo. 1, l. c. 369, 116 S. W. 902; Embree v. Kansas City & Liberty Boulevard Road District, 257 Mo. 593, l. c. 616, 166 S. W. 282; State v. Webber, 214 Mo. 272, 113 S. W. 1054, 15 Ann. Cas. 983.] The question of classification being primarily one for the Legislature, it is the duty of the courts to sustain it if there is any reasonable basis for the classification. [Hawkins v. Smith, 242 Mo. 688, 147 S. W. 1042; State ex rel. v. Chicago, B. & Q. Ry. Co., 246 Mo. 512, 152 S. W. 28.] An act of the Legislature should not be declared unconstitutional unless it appears beyond a reasonable doubt that it is in contravention of the Constitution. [State v. Webber, supra, 214 Mo. 272, l. c. 279, 113 S. W. 1054, 15 Ann. Cas. 983.] Measured by these rules, we have no hesitancy in holding that this statute is not class legislation of the prohibited variety. It would have been impracticable, if not im-

possible, to have made the act more general and at the same time restrict its application to the class of persons to which it is intended to apply. The facts in this case distinguish it from the cases of Sams v. St. Louis & M. R. Ry. Co., 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475; Lige v. Chicago, B. & Q. Ry. Co., 275 Mo. 249, 204 S. W. 508, L. R. A. 1918F, 548; In re French, 315 Mo. 75, 285 S. W. 513, 47 A. L. R. 688, and City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1, cited by respondent.''

We have already held that there are reasonable grounds for the classification that this act makes, and that it operates equally on all within the same class. Therefore, the appellant's contention is without merit.

We have concluded that the judgment of the trial court was correct. It is, therefore, affirmed. All concur.