GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY CO. v. W. C. LONG.

Delivered May 20, 1897.

**1. Carriers of Passengers—Degree of Care—Intoxicated Passenger.**

A carrier of passengers is held to the exercise of a high degree of care in providing for the comfort and convenience of passengers, and the power is given it to expel or exclude from its cars any person whose conduct or condition is such as to ren der rudeness or disturbance inevitable or reasonably probable; but the mere fact that an individual may have drunk to excess will not justify his expulsion from a public conveyance, if he appears to be peaceably inclined, and is not interfering with anyone.

**2. Same—Injury by Fellow Passenger Not Anticipated.**

A passenger apparently in an intoxicated condition was asleep on a railway train. As he awoke and got up, a small pistol fell from his pocket, and was discharged as it struck the floor, the ball entering the foot of another passenger and seriously injuring him. There was nothing which could cause the employes of the railway company to anticipate such an accident, and the conduct of the drunken passenger would not have justified the carrier in refusing him admittance to the car or in ejecting him. Held, that the facts did not justify a verdict for damages against the carrier.

APPEAL from Bexar. Tried below before Hon. S. G. NEWTON.

*Upson & Bergstrom,* for appellant.

*Simpson & Onion,* for appellee.—1. Where a passenger on a railway is injured, and it is "shown that the person who committed the injury was improperly admitted upon the train, being drunk and disorderly at the time, or was improperly permitted to remain there, because of his actions, or improper conduct after he got upon the train, the company is liable for all the consequences." 2 Woods' Railway Law, p. 1177; Thompson Car. Pass., p. 302; sec. 2; Railway v. Pillow, 18 Am. Rep., 427; 2 Rorer on Railroads, p. 1111; Meyer v. Railway, 54 Fed. Rep., 116; Vinton v. Railway, 11 Allen (Mass.), 306; Goddard v. Railway, 2 Am. Rep., 41; Railway v. Vandyne, 57 Ind., 579; Railway v. Williams, 56 Ill., 185.

2. Railway companies are required to exercise such a high degree of foresight as to possible dangers and annoyances, and such a high degree of care in guarding against them, as would be used by very cautious, prudent and competent persons under similar circumstances, and where a railway company knowingly receives a drunken or disorderly person as a passenger, and permits him to remain as such, and such drunken or disorderly person inflicts injury upon a fellow-passenger, the company is liable, and this, whether or not the particular injury in-

flicted could have been anticipated. Railway v. Halloren, 53 Texas, 54; 2 Woods' Railway Law, p. 1177; Railway v. Welsh, 86 Texas, 204; Railway v. Russell, 28 S. W. Rep., 1042; Railway v. Shields, 28 S. W. Rep., 710; Gonzales v. Galveston, 84 Texas, 6; Thompson Car. Pass., p. 302, sec. 2; Meyers v. Railway, 54 Fed. Rep., 116; Shear & Red. Neg., vol. 1, secs. 28, 29; 18 Am. Rep., 427; 2 Am. Rep, 41; Railway v. Adams, 2 White & Will., sec. 423; Railway v. Williams, 56 Ill., 185; Angel on Carriers; p. 534; 118 Mass., 228; Wharton Neg., secs, 16, 17, 18, 19, 20, 21, 77, 78, 85, 86.

FLY, Associate Justice.—Appellee sued appellant for damages in the sum of $10,220, arising from a wound in the foot. It was alleged that appellee and his wife in October, 1894, entered a passenger coach of appellant in the city of Houston to be transported to San Antonio; that a person named Emmett Townsend also boarded the train at Houston while in a drunken condition; that the employes, knowing that said Townsend was intoxicated, permitted him to stagger up and down through the train and jostle the passengers; that the employes of appellant also knew that Townsend carried a forty-five calibre six shooter, and while he was passing through the car in which appellee was seated, the pistol fell to the floor and was discharged, the bullet inflicting a serious wound on the foot of appellee. There was a verdict for $4320 in favor of appellee.

The carrier of passengers is held to the exercise of a high degree of care in providing for the comfort and convenience of its passengers, and incidental to this duty the power is given to repress and prohibit all disorderly conduct on its means of transportation, and to expel or exclude therefrom any person whose conduct or condition is such as to render acts of impropriety, rudeness, indecency or disturbance either inevitable or reasonably probable. Sullivan v. Railway (Mass.), 1 L. R. A., 513; Putnam v. Railway, 55 N. Y., 108; Ray Neg. Imp. Dut. Pass., sec. 53.

In all of the cases to which our attention has been called, where damages have been allowed on account of the acts of one passenger towards another, the liability of the carrier has been made to depend upon the conduct or condition of the offending passenger being such as to place a prudent person upon notice that interference with other passengers was reasonably to be anticipated. In other words, the carrier will be held liable when by the exercise of proper care the acts of violence might have been foreseen and prevented. Britton v. Railway, 88 N. C., 544; King v. Railway (Ind.), 18 Am. and Eng. R. R. Cases, 386; Putnam v. Railway, 55 N. Y., 108; Weeks v. Railway, 72 N. Y., 50; Felton v. Railway, 69 Ia., 580; Mullan v. Railway, 46 Minn., 474.

A railway company has power, as above stated, of refusing to receive as a passenger, or to expel, any one who is drunk or disorderly, or whose conduct is such "as to endanger the safety or interfere with the reasonable comfort and convenience of the other passengers, and may

exert all necessary power and means to eject from the cars any one so imperiling the safety or annoying the others. * * * If this duty is neglected without good cause, and a passenger receives injury which might have been reasonably anticipated or naturally expected, from one who is improperly received or permitted to continue as a passenger, the carrier is responsible." Meyer v. Railway, 54 Fed. Rep., 116; Railway v. Hinds (Penn.), 91 Am. Dec., 224; Flint v. Transportation Co., 34 Conn., 554.

In the last cited case, a passenger was wounded by the discharge of a gun which fell from the hands of one of a number of drunken soldiers who were engaged in an affray on a boat, and the liability of the carrier was put upon the ground that the passenger was allowed to pass without warning to the part of the boat where the affray was going on, and no effort whatever was made to quell the disturbance. The following charge given by the trial court was commended: "The defendants were bound to exercise the utmost vigilance in maintaining order and guarding the passenger against violence, from whatever source arising, which might reasonably be anticipated or naturally be expected to occur, in view of all the circumstances, and of the number and character of the persons on board."

The facts in the case of Putnam v. Railway, above cited, are more nearly similar to the case before us, than any we have seen, and in passing upon it the New York Court of Appeals said: "It may be conceded that Foster, the individual who inflicted the injury resulting in the death of the plaintiff's intestate, was drunk when he came on the car; but so long as he remained quietly by the driver on the platform, neither entering the car nor molesting or annoying passengers in any way, the conductor would not have been justified in refusing to permit him to remain as a passenger. The fact that an individual may have drunk to excess will not, in every case, justify his expulsion from a public conveyance. It is rather the degree of the intoxication, and its effect upon the individual, and the fact that by reason of the intoxication he is dangerous or annoying to the other passengers, that gives the right and imposes the duty of expulsion."

The facts in that case were, that Foster was drunk and went into a street car and grossly insulted two ladies who were with the party who was afterwards killed by him. Deceased expostulated, and appealed to the conductor to make Foster keep quiet, which he did. Foster then left the car and went out on the front platform, where he quietly remained until deceased was leaving the car at the other end, when he (Foster) sprang from the car and ran back and assaulted deceased. The court held that there was nothing in the conduct of Foster, after the insult committed by him, that would lead the employes to apprehend that he intended making a murderous attack on deceased. It was said by the court: "The assault by Foster upon the deceased could not have been foreseen, and it was not the reasonable or probable consequence of the omission of the conductor to eject him from the car, and upon principle as

well as upon authority the injury was too remote to charge the defendant for the damages."

In the case now before us, the facts to charge the railroad company are not so strong as in the New York case. Appellee, with his wife, had entered the car of appellant at Houston, to be transported to San Antonio. Before the train left the main depot, one Emmett Townsend passed through the car, smoking a cigar, and was met by a porter who did not attempt to stop him. As he passed through he peered into the faces of the passengers, as if looking for some one. He was staggering. After the train started Townsend was noticed standing on the platform next to the sleeper, looking into the car. The conductor talked to him. As soon as the conductor went into the sleeper, Townsend again passed through the coach in which appellee and wife were sitting. He stumbled when near them and fell against appellee's wife. Appellee pushed him, and he went on through. He did not speak, and did not display any weapon or endeavor to interfere with any one. Townsend passed through the car two other times, each time staggering, but saying nothing, nor interfering with any one. He was intoxicated. Some time after Townsend had passed through the car the fourth and last time, appellee went into the smoking apartment, which was divided from the coach by a partition, and took a seat. Townsend was in this apartment asleep. A station was approached, and when the whistle sounded Townsend got up and as he passed appellee a small pistol fell from his person, struck the floor and was discharged, the ball entering appellee's foot and seriously and permanently injuring him.

The above is the version of the affair as stated by appellee, who judged that Townsend was intoxicated by his staggering and the maudlin expression on his face. Townsend was not boisterous, but passed quietly through the car. When Townsend stumbled, one hand was thrown out and passed over the hair and face of Mrs. Long. Townsend was partially paralyzed. He was a deputy sheriff, and told the conductor he was looking for a negro. No one said anything to the employes of appellant about the actions of Townsend. There does not appear in the record any circumstance that could cause the employes of appellant to anticipate that Townsend would get up and drop a pistol, unless it be the fact that he was intoxicated, and staggered and smoked in the ladies' car before the train started. He was not rude, except as stated, nor boisterous, and when he stumbled it would seem that it occurred by his running against baggage lying on the floor of the car. There does not seem to be any connection between the intoxication and the dropping of the pistol. It might have happened to any man who carries arms, no matter how sober.

There was nothing in the conduct of Townsend that would have justified the carrier in refusing him admittance to the car or in ejecting him. Thompson v. Railway, 602 N. Y., 608. No human being could have foreseen what happened, or could have had any ground upon which to base an anticipation that such a result would follow the presence and

intoxication of Townsend. Says the Supreme Court of Kentucky: "It may be stated briefly, in assuming the liability of a railroad to its passengers for injury done by another passenger, only where the conduct of this passenger had been such before the injury as to induce a reasonably prudent and vigilant conductor to believe that there was reasonable ground to apprehend violence and danger to the other passengers, and in that case asserting it to be the duty of the conductor of the railroad train to use all reasonable means to prevent such injury, and if he neglects this reasonable duty, and injury is done, that then the company is responsible; that otherwise the railroad is not responsible." Railway v. McEwan, 31 S. W. Rep., 465.

No one on the train seemed to anticipate any trouble from Townsend, and that appellee himself did not expect any trouble to result from his presence on the train is shown by the fact that he made no complaint to the conductor, and went into the apartment where he had seen Townsend go and where he found him, and seated himself. The pistol was not displayed, and no one could have known that he had one, unless it may have been the conductor who knew he was an officer, and had authority to carry arms.

Because the evidence is insufficient to sustain the verdict, the judgment is reversed and the cause remanded.

*Reversed and remanded.*