FRANK LIGE v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

Division One, July 5, 1918.

1. **INTOXICATED PASSENGER:** Constitutionality of Statute: Unreasonable Burden Upon Conductor. Sections 1 and 2, Laws 1909, page 438 (Secs. 4710 and 4711, R. S. 1909), making it unlawful for any person to enter a passenger train intoxicated or to drink intoxicating liquors on such train, and imposing a fine upon the person guilty of such offense, and making it the duty of the conductor to report to the prosecuting attorney the names of the person so intoxicated and of three witnesses, and subjecting him to a fine for his failure to do so within five days, are not directed to the railroad company, but are directed to the intoxicated or drinking passenger and the conductor; and hence the railroad company is not in a position to assert that they impose unreasonable and arbitrary duties upon the conductor and for that reason are violative of the due-process and equal-privilege clauses of the Constitutions.

2. ———: ———: Unequal Operation: Exception of Dining and Private Cars. The act of 1909, page 438 (Secs. 3710, 4711, and 4712, R. S. 1909), making it unlawful for any person to enter a passenger train or car intoxicated or to drink intoxicating liquor on said passenger train or car or to exhibit or carry exposed any intoxicating liquor while on said passenger train or car, but excepting dining cars or private cars from the act's operation, does not operate equally and alike upon all subjects similarly situated, and is therefore clearly unconstitutional. There is no substantial or reasonable distinction between passenger and sleeping cars on the one hand and dining and private cars on the other, and as the statute has no reasonable basis for a separation of them into different classifications it violates those provisions of Section 53 of Article 4 of the Constitution of Missouri and of the Fourteenth Amendment of the Constitution of the United

States which prohibit the enforcement of any State law which denies the equal rights or abridges the privileges and immunities of citizens of the United States.

3. ———: ———: Common Law Right of Action Nevertheless. Notwithstanding the fact that the statute · upon which plaintiff grounds his cause of action for personal injuries is unconstitutional, yet if the petition, independent of that plea, states a good cause of action at common law, a demurrer to the evidence should not be sustained, if it warrants a submission of the case to the jury upon the common-law theory.

4. ———: Injury to Fellow Passenger: Liability of Carrier. A common carrier is bound to exercise the utmost practicable care for the safety of its passengers, to safely transport them, and to protect them while in transit from violence and insults from all persons on the train, including fellow-passengers, and any violation of this duty which results injuriously to a passenger renders the carrier liable in damages therefor; but the duty does not amount to an absolute guaranty that a passenger will be transported with absolute safety or that he will not be insulted or injured by an intoxicated fellow-passenger. The rule means that the conductor and other trainmen must use the highest degree of care, consistent with the business, to ascertain and prevent such injuries, but the carrier is not liable for injuries inflicted by one passenger upon another, if in the exercise of that degree of care the assault or injury is not to be forseen.

5. ———: ———: ———: Sudden and Unexpected Assault. A common carrier is not liable in damages to a passenger for injuries resulting from a sudden assault by another intoxicated passenger, who, without any previous threat or verbal altercation, who was not previously boisterous or insulting in his talk or conduct and who gave no evidence that he was intoxicated except that he was talking generally and having a jolly good-time, suddenly seized an iron wrench and struck on the head the other passenger, who was a total stranger to him.

Appeal from Harrison Circuit Court.—*Hon. G. W. Wanamaker*, Judge.

REVERSED.

*H. J. Nelson, Barlow, Barlow & Kautz, J. A. Lydick* and *M. G. Roberts* for appellant.

(1) The instruction in the nature of a demurrer to the evidence should have been given for the reason that the act of June 8, 1909 (Laws 1909, p. 438; Secs.

4710, 4711, 4712, R. S. 1909), upon which the plaintiff specifically in his petition predicates a recovery, is void and unconstitutional for: (a) The act is an unreasonable and arbitrary exercise of power, in violation of the due-process clause of the Missouri Constitution (Sec. 30, art. 2) and the Fourteenth Amendment to the Federal Constitution, in that it requires a conductor of a train to report to the prosecuting attorney every passenger who is intoxicated or who takes a drink of intoxicating liquor, or who exhibits intoxicating liquor on his train, together with the names of three witnesses who have personal knowledge, and this he is required to do without regard to the question whether the conductor had any knowledge of the offense. (b) The statute is further invalid for the reason that it provides that a person may became intoxicated, or drink intoxicating liquor, or exhibit intoxicating liquor, on dining cars and private cars while penalizing the same offense in other cars on the same train, thus granting special or exclusive rights, privileges and immunities in violation of Section 53 of Article 4 of the Missouri Constitution and Fourteenth Amendment of the Constitution of the United States prohibiting any State from passing any law which abridges the privileges and immunities of citizens of the United States. State ex rel. Rolston v. Chicago, B. & Q. R. Co., 246 Mo. 515; Embree v. Kansas City & Liberty Blvd. District, 257 Mo. 616. (2) The instruction in the nature of a demurrer offered by the defendant at the close of plaintiff's evidence and again at the close of all the evidence, should have been given for: A sudden and unanticipated assault by one passenger upon another does not render the carrier liable unless it is shown that its employees knew or could have known in time to prevent the assault from the wrongdoer's act and conduct that he was contemplating injury to his fellow passengers. Galveston, H. & S. A. R. Co. v. Long, 36 S. W. 485; Putnam v. Railroad, 55 N. Y. 108; Brehony v. Pottsville Union Traction Co., 218 Pa. 123; Pittsburg, C. C. & St.

L. Railroad Co. v. Vandyne, 57 Ind. 576; Milliman v. New York C. & H. Railroad Co., 66 N. Y. 643; 10 Corpus Juris, 905; 3 Thompson on Negligence, sec. 3093, p. 550, sec. 3087, p. 545; Thompson v. Manhattan Ry. Co., 75 Hun, 548, 27 N. Y. Supp. 608; Felton v. Chicago, R. I. & P. Ry. Co., 69 Iowa, 580, 29 N. W. 618; Spohn v. Mo. Pac. Ry. Co., 87 Mo. 74; Woas v. St. Louis Transit Co., 198 Mo. 677.

*J. C. Wilson* and *Garland Wilson* for respondent.

(1.) The Act June 8, 1909 (Laws 1909, p. 438), the same being Secs. 4710, 4711, 4712, R. S. 1909, is constitutional. Jones v. Yore, 142 Mo. 38; Simon v. Craft, 182 U. S. 427; Moore v. Missouri, 159 U. S. 673; State v. Miller, 209 Mo. 389; Giozza v. Tiernan, 148 U. S. 657; Ohio ex rel. Lloyd v. Dollison, 194 U. S. 445; Gladson v. Minnesota, 166 U. S. 427; State ex rel. Rolston v. Railroad, 246 Mo. 512; State v. Swagerty, 203 Mo. 523; Brady v. Mattern, 125 Iowa, 163; Embree v. K. C. & L. B. D., 257 Mo. 593; Corrigan v. Kansas City, 211 Mo. 608. (2) A carrier who permits a drunken man to become and remain a passenger on its train is liable for damages caused by an unprovoked assault upon another passenger. R. S. 1909, sec. 4710, 4711, 4712; Spohn v. Railroad Co., 101 Mo. 452; Westcott v. Seattle Railway Co., 41 Wash. 619; Jackson v. Boston El. Railway Co., 217 Mass. 515. (3) Plaintiff's instructions that the defendant was bound to exercise that high degree of care that a careful railroad would employ in conveying its passengers safely, under the circumstances, announces the correct rule. Hudsenhamp v. Citizens' Railway Co., 37 Mo. 537; Lemon v. Chanslor, 68 Mo. 340; Dougherty v. Missouri Railway Co., 81 Mo. 325; Furnish v. Mo. Pac. Ry. Co., 102 Mo. 438; Clark v. Chicago & A. Ry. Co., 127 Mo. 197; Porch v. Southern Electric Railway Co., 76 Mo. App. 601; Choquette v. Southern Electric Railway Co., 80 Mo. App. 515; Young v. Mo. Pac. Ry. Co., 93 Mo. App. 267; Spohn v. Mo. Pac. Ry.

Co., 101 Mo. 417; Redmon v. Metropolitan St. Ry. Co., 185 Mo. 1; Gardner v. Metropolitan St. Ry. Co., 223 Mo. 389; Stauffer v. Met. St. Ry. Co., 243 Mo. 305; Powell v. Union Pac. Railway Co., 255 Mo. 420; Wentz v. C. B. & Q. Railway Co., 259 Mo. 450.

WOODSON, J.—This is a suit brought by the plaintiff against the defendant, in the circuit court of Harrison County, to recover damages for personal injuries sustained by him while a passenger upon one of its trains, by being assaulted by Bert Burke, another passenger thereon, while in a drunken or intoxicated condition. The plaintiff recovered judgment for one thousand dollars, and the defendant timely and properly appealed the cause to this court.

Omitting unessentials the petition reads:

"Plaintiff further states that the defendant wholly disregarding its duties towards its said passengers, and especially towards this plaintiff, and while plaintiff was so riding on the said ticket purchased as aforesaid, negligently and carelessly by and through its servants and agents, to-wit, its conductor and brakeman in charge of said train, permitted one Bert Burke, while drunk and in a condition dangerous to the property and lives of its passengers, to enter its said train at St. Joseph, Missouri, and to become a passenger on the same train on which defendant was carrying this plaintiff to Blythedale, Missouri, as aforesaid. And that the defendant by its said conductor and brakemen negligently and carelessly permitted and suffered said Bert Burke, through the negligence and carelessness of its servants, to remain on its train as a passenger, while said Burke was drunk and in a condition dangerous to the property and lives of defendant's said passengers traveling on said train as aforesaid—all of which was in violation of Article 7, Chapter 36, Revised Statutes of Missouri, as aforesaid.

"Plaintiff further states that while so traveling as a passenger as aforesaid on the railroad of the defendant as aforesaid, from St. Joseph, Missouri, to Blythe-

dale, in Harrison County, Missouri, on said 30th day of November, 1912, at a point on defendant's railroad between Bethany, Missouri, and Ridgeway, Missouri, and without any fault on the part of this plaintiff, the said Bert Burke aforesaid, while drunk and in a condition dangerous to the lives and property of the other passengers on said train, while he was being carried by defendant, who had knowledge of his condition, unlawfully, wrongfully, and feloniously assaulted this plaintiff by striking him upon the head with a large iron T. wrench or stove key, giving to him a dangerous wound, thereby wounding, injuring and permanently disfiguring the plaintiff and causing him great pain, suffering and humiliation.''

Then follows an allegation as to the extent of the injuries; that they were caused by the wrongful acts of Burke and said negligence of the defendant, and a prayer for judgment for $2500. The statutes referred to in the petition read as follows:

''Section 1. It shall be unlawful for any person in this State to enter a passenger train or car kept for the conveying of passengers, intoxicated, or drink intoxicating liquor on said passenger trains or car, or to exhibit or carry exposed any intoxicating liquor while on said passenger train or car, and every person or persons so doing shall be guilty of a misdemeanor and fined not less than five dollars or more than twenty-five dollars for said offense.

''Section 2. It shall be the duty of the conductor on every passenger train or car in this State to report to the prosecuting attorney of the counties in which any such offense is committed, together with the name of the person so intoxicated, the date thereof, and the names of three witnesses who have personal knowledge of the commission of said offense, and upon failure to do so within five days thereafter he shall be guilty of a misdemeanor and fined for each and every offense not less than five dollars or more than twenty-five dollars.

"Section 3.    Provided nothing in this act shall be so construed to apply to dining cars or private cars."

The answer of defendant was as follows:

"Now comes the defendant in the above entitled cause and denies the allegations in plaintiff's petition contained.

"Defendant, further answering, states that Sections 4710, 4711 and 4712 of Article 7 of Chapter 36 of the Revised Statutes of Missouri for the year 1909, to which law reference is made in plaintiff's petition, are unconstitutional, invalid and of no effect for the reason that said law exempts from its provisions dining cars and private cars, and for the further reason that said law, when passed during the session of 1909 by the Legislature of Missouri (Laws 1909, p. 438) did not have the subject-matter clearly expressed in the title as required by Section 28 of Article 4 of the Constitution of Missouri; and for the further reason that said alleged law is in violation of the 14th Amendment to the Constitution of the United States, in that it abridges the privileges and immunities of citizens of the United States, and denies to persons within the jurisdiction of the State of Missouri the equal protection of the laws; and for the further reason that the said alleged law is in violation of Section 53 of Article 4 of the Constitution of Missouri; and for the further reason that the said alleged law is in violation of Section 30 of Article 2 of the Constitution of Missouri; and for the further reason that said alleged law is in violation of Section 23 of Article 2 of the Constitution of Missouri.

"Wherefore defendant having fully answered asks to be discharged with its costs in this behalf expended."

The following facts are undisputed:

Frank Lige, the plaintiff, and Bert Burke, who assaulted him, were perfect strangers and were passengers on defendant's train from St. Joseph, Missouri, to points in Harrison County, on November 30, 1912. Both of them sat in the smoking car of the train. The train left St. Joseph about 10 a. m.    It passed through the towns of Crosby, Helena, Union Star, King City,

Ford City, Darlington, Albany, New Hamton, Bowman and Bethany. Somewhere between Bethany and Ridgeway, Burke picked up an iron T wrench near a stove in the smoking car and struck Lige on the head, causing a painful wound. The assault was committed without any warning whatever, without any prior threat or any previous verbal altercation.

Several witnesses for the plaintiff testified that Burke was under the influence of liquor while on the train. Some described him as being intoxicated, others as being drunk, and still others as being under the influence of liquor. One said: "I thought he was intoxicated." Others testified that "he was under the influence of liquor;" "he was a little bit intoxicated;" "well, think he had some whisky on him;" "I would judge he was under the influence of liquor;" "I would call him intoxicated;" "he looked to me like he had been on a spree;" "I thought he was pretty drunk;" "he was feeling pretty good, I thought;" "he looked a little full to me;" "he looked like he was intoxicated;" "my opinion was at the time he was rather under the influence of liquor to some extent."

In short, the testimony of all the witnesses, including the conductor and brakeman on the train, was that Burke was in an intoxicated condition; the attention of the witnesses, some of them strangers to Burke, were attracted to him by his "joshing" and talking and intoxicated appearance. The evidence also tended to show that Burke was intoxicated when he boarded the train at St. Joseph, with his shirt slightly torn, and that his condition appeared to some of the witnesses to grow worse as the train moved on.

That independant of Burke's intoxication, joshing and talking as previously mentioned, Burke was guilty of no improper conduct whatever while in the train until he suddenly and without cause assaulted the plaintiff as before stated; he did not know, nor had he addressed or threatened plaintiff prior to that time, but was conversing pleasantly with other parties and having a jolly time.

I. The first contention advanced by counsel for the defendant is that the trial court erred in refusing the demurrer asked by them to the plain-tiff's evidence. This contention is divided by counsel into two subdivisions and each discussed separately upon wholly different grounds. The first contends that the act of the Legislature mentioned in the pleadings is violative of Section 30 of Article 2 of the Constitution of Missouri and Section 1 of the 14th Amendment of the Constitution of the United States, known as the due-process clauses respectively thereof, in that it is unreasonable and arbitrary in requiring a conductor of a train to report to the prosecuting attorney every person who is intoxicated or who takes a drink of intoxicating liquor, or who exhibits intoxicating liquor on his train, together with the names of three witnesses who have personal knowledge of the facts; and the second contention is that said act of the Legislature violates Section 53 of Article 4 of the Constitution of Missouri, and the 14th Amendment of the Constitution of the United States, which respectively prohibit the enforcement of any law of the State denying equal rights, or abridges the privileges and immunities of the citizens of the United States.

*Constitutionality.*

We will dispose of these propositions in the order stated.

Attending to the first: No authority is cited in support of this contention, and in our opinion for the reason that none exists, and if the act is given a reasonable construction, which is one of the fundamental rules of statutory construction, no other authority will be necessary. The evident intention of the Legislature was to impose a duty upon the conductor to report to the prosecuting attorney all parties who to his knowledge had been intoxicated or drinking or exhibiting intoxicating liquors on his train, for the purpose of having him punished for being guilty of such conduct upon the cars of a common carrier, in the presence of fellow passengers and thereby deter all persons from

275 Mo.—17

indulging in such misconduct on all such trains. We state this for the reason that the accomplishment of no other object seems to have been in the mind of the Legislature; had it also been the design to afford *immediate* protection to the passengers from the abuse, insults and assaults of such persons, then it would seem that the Legislature would have used some appropriate language requiring the conductor to prevent such persons entering the train and to remove all such therefrom and make the company liable in damages for all injuries sustained by any passenger by reason of such misconduct on the part of any such person. But an examination of the act which we have copied in full in the statement of the case will reveal the fact that no such idea is expressed by the language used therein, nor is reasonably inferrable therefrom, but the design, as previously stated, was not to affect the company, but to make it unlawful for any intoxicated person to enter a passenger train, or to drink or exhibit intoxicating liquors thereon, and thereby deter them from the commission of all such crimes in the future. The duty of the company to prevent such persons from entering its trains, remove them therefrom and protect its passengers from their insults and injury is well defined and regulated by the common law, which we suppose had much to do with influencing the Legislature in the passage of the act in the form we find it. This common law duty of the carrier will receive careful consideration hereafter in a more appropriate place.

For the reason stated, the act is not applicable to defendant company, but to the conductor and intoxicated passenger, etc., only, and therefore the defendant is in no position to question the constitutionality of the act.

But, assuming that we are mistaken in the foregoing views, and assuming that the act is applicable to the defendant, then the second contention mentioned would be of a more serious character. Section 1 of the act in question makes it unlawful for any person in this State to enter a passenger train or car kept for the conveyance of passengers while intoxicated, etc., and im-

poses a fine of not less than five dollars nor more than twenty-five dollars for said offense, while Section 3 thereof provides that nothing therein contained shall be so construed as to apply to dining cars or private cars. In other words, that section makes it unlawful for any person to go upon a passenger train or enter any car thereof while intoxicated or to drink intoxicating liquors or exhibit the same while thereon, excepting therefrom dining and private cars.

This act in our opinion is clearly unconstitutional, violative of both the State and United States Constitutional provisions before mentioned, in that there is no substantial and reasonable distinction between passenger and sleeping cars on the one hand and dining and private cars upon the other; the primary purpose of the first named is for the occupancy by the public while traveling thereon and incidentally they are constantly used by many for eating and sleeping purposes also; the second are chiefly designed for traveling and sleeping purposes, yet they are also constantly used by many for eating places; the diner is intended for eating places for all aboard the train who desire to avail themselves of the privilege, yet they are incidentally used for travel while the passengers are dining therein, and the private car is designed for all of said purposes, for those aboard them. But after all, all of them, with the engine and tender, constitute the means of transportation of the traveling public, the paramount object of their creation, and while all of them serve a useful purpose in accomplishing that end, yet some of them in addition contribute to the pleasure and comfort of the passengers while en route, and even to their necessities while on through trains on long journeys, but, nevertheless, each and all of them constitute a link in the train of transportation and are so closely commingled and inseparably connected in their common purpose that there can be no reasonable separation or classification made of them without disturbing the comforts and necessities of all on board the train, and subjecting all to the insults and injuries which the act

was designed to prohibit. Under these conditions the law would not and could not operate equally and alike upon all similarly situated. That being true the act is clearly unconstitutional, as previously stated and as shown by the following authorities: State ex rel. v. Chicago, Burlington & Quincy Railroad Co., 246 Mo. 512, l. c. 514 and 515; Embree v. Kansas City & Liberty Blvd. Road District, 257 Mo. 593, l. c. 616.

But notwithstanding the unconstitutionality of this act for the reasons stated, yet the demurrer to plaintiffs evidence could not be properly sustained on that ground only because the petition, independent of the plea of the act mentioned, stated a good cause of action at common law and the cause should have been submitted to the jury upon that theory of the case, if the evidence introduced upon that branch of the case warranted a submission, which we will consider in the next paragraph.

**Common Law Plea: Demurrer.**

II. Regarding the common law cause of action: The petition in substance stated that the defendant was a common carrier of passengers; that the plaintiff was a passenger upon one of defendant's trains going from St. Joseph, Missouri, to Ridgeway; that one Burke was also a passenger upon said train and was riding in the same car with plaintiff between said points; that at the time said Burke entered said car he was intoxicated and remained so during the time the train ran from St. Joseph to Ridgeway, which fact was well known to the agents and servants of defendant in charge of said train and car, and that they knew that said Burke was liable to insult and injure its passengers on said train and especially the plaintiff; that it was the duty of the defendant to use the highest degree of care to safely transport plaintiff between said points and to protect him from insults and injury at the hands of other passengers on the train, and that in violation of said duty the defendant through its said agents and servants negligently and carelessly permitted said Burke, without cause or excuse,

**Injury to Passenger.**

to assault and strike plaintiff with an iron rod over the head, and thereby greatly injure him, etc.

The plaintiff's evidence tended to show the truthfulness of all of said allegations except as hereinafter stated; and all the evidence for both parties showed that Burke prior to the assault complained of was not boisterous or insulting in his talk and conduct, but was talking generally and having a jolly good-time, disturbing no one, until the train neared Ridgeway, when he suddenly and without warning picked up the poker and struck the plaintiff with it. The evidence also failed to show that the conduct of Burke prior to the assault was such as to warn the conductor in charge of the train or any one else on the car that he was in a bad humor or that he intended to insult or to do violence to any one.

Upon this state of the record counsel for the defendant contend that the court erred in refusing the defendant's demurrer to the plaintiff's evidence on the common-law theory of the case, and state their reasons therefor in this language:

"A sudden and unanticipated assault by one passenger upon another does not render the carrier liable unless it is shown that its employees knew or could have known in time to prevent the assault from the wrongdoer's act and conduct that he was contemplating injury to his fellow passengers. In this case, it appears beyond any question that Burke made no threats, used no profanity, was not abusive to anyone, had no trouble, and conducted himself properly until he suddenly picked up the wrench and quickly assaulted the plaintiff. Under such circumstances the carrier is not liable. The fact that he was under the influence of liquor or even intoxicated, but otherwise not guilty of any misbehavior, will not subject a carrier to liability for an injury caused by his act in assaulting a fellow passenger."

The following authorities are cited in support of this contention: Galveston H. & S. A. Ry. Co. v. Long, 36 S. W. (Tex.) 485; Putnam v. Railroad, 55 N. Y. 108;

Brehony v. Pottsville Union Traction Co., 218 Pa. 123; Pittsburgh, C. C. & St. L. Railroad Co. v. Vandyne, 57 Ind. 576; Milliman v. New York C. & H. R. Railroad Co., 66 N. Y. 642; 10 Corpus Juris, 905; 3 Thompson on Negligence, sec. 3093, p. 550, sec. 3087, p. 545; Thomson v. Manhattan Ry. Co., 75 Hun, 548, 27 N. Y. Supp. 608; Mills v. Atlantic C. L. R. Co., 90 S. E. (N. C.) 221; Felton v. Chicago, R. I. & P. Ry. Co., 69 Iowa, 577, 29 N. W. 618; Spohn v. Mo. Pac. Ry. Co., 87 Mo. 74; Woas v. St. Louis Transit Co., 198 Mo. 664, l. c. 677.

It is no longer a debatable question in this country that a common carrier of passengers for hire is bound to exercise the utmost practicable care, to safely transport its passengers and to protect them while in transit from insults and violence at the hands of all on the train, including fellow-passengers, and any violation of this duty which results injuriously to a passenger renders the carrier liable in damage therefor; but that duty does not amount to an absolute guaranty that a passenger will be transported absolutely safely to his destination or that he will not be insulted or injured by a fellow-passenger while in transit. It simply means that the conductor and those in charge of the train must use the highest degree of care, consistent with the business, to ascertain and prevent such injuries, but the carrier is not liable for an injury to a passenger caused by an impending danger, if not discernible by the exercise of that degree of care.

In the case at bar Burke had neither said nor done anything indicating to an ordinarily prudent person engaged in that class of business that he had any evil design against any one, or that he intended to do violence to anyone, much less the plaintiff, whom he did not know and had never met.

The conductor and all of the passengers who testified stated that they did not see or hear Burke say or do anything prior to the assault that led them to believe that he intended to strike the plaintiff or do violence to any one. Even the sheriff of the county, who was a passenger on the same car with plaintiff and

whose duty it was to preserve the peace, did not see or hear the latter do or say anything to cause him to apprehend any trouble whatever on the part of Burke.

In discussing a similar case the Supreme Court of Pennsylvania in the case of Brehony v. Pottsville Union Transit Co., 218 Pa. St. 123, clearly announced the facts and law of a similar case, which are substantially stated in the syllabus of the case, as follows:

"In an action by a woman passenger against a street railway company to recover damages for personal injuries sustained as the result of a kick of an intoxicated passenger, where the only negligence alleged was the action of the conductor in admitting into the car the man who inflicted the injuries, when visibly intoxicated, it is reversible error to submit the case to the jury where the evidence shows that there was nothing in the appearance or the conduct of the man as he entered the car to attract attention, or excite suspicion, and that he did not become violent until an altercation arose between him and the conductor as to the fare."

In the case of Galveston, Houston, San Antonio Railway Co. v. Long, 36 S. W. 485, where a passenger on a railway train, who was somewhat intoxicated and who passed a number of times through the train, apparently looking for some one, without offense toward any one, accidently stumbled over some baggage, and a revolver fell from his pocket, which was discharged and wounded another passenger, the Civil Court of Appeals of Texas held that the defendant had no reason to anticipate such an accident and therefore was not liable for the injury sustained by the plaintiff.

In the case of Putnam v. Broadway & Seventeenth Avenue Railroad Co., 55 N. Y. 108, the plaintiff's intestate, with two ladies, took passage upon one of defendant's cars. Shortly thereafter one Foster, who was intoxicated, got on the front platform of the car and after riding there a short distance opened the car door and insulted and annoyed the ladies. Putnam asked the conductor to make him be quiet; the conductor directed him to sit down and behave himself. He sat

down near Putnam and after the conductor returned to the rear platform he addressed to the former abusive and threatening language, in a low tone, not audible to the conductor. After remaining a short time he returned to the front platform where he remained quietly until Putnam left the car, when he jumped therefrom with the car hook, and as Putnam was assisting the ladies to alight, Foster struck him with the hook, causing death. In an action against the company to recover damages the court held that there was no evidence of neglect of duty on the part of the conductor, or want of proper care and vigilance on the part of the servants of defendant; certainly none connected with the attack upon Putnam, or to which it could be legally or logically traced, and that defendant was not liable.

In the case of Pittsburg, Cincinnati and St. Louis Railway Co. v. Vandyne, 57 Ind. 576, the Supreme Court of Indiana held that slight intoxication of the defendant, such as would not seriously affect the safety of the passengers aboard the train, would not justify a railroad company in refusing to receive and carry him.

In the case of Milliman v. New York Central and Hudson River Railroad Co., 66 N. Y. 642, the Court of Appeals held that the fact that a man is intoxicated does not alone deprive him of the right to ride upon a railroad car, nor does it free the company from its duty to render to him, as a passenger, due care.

On page 905 of 10 Corpus Juris, it is said:

"It is the duty of the carrier's employees to protect passengers from the acts or conduct of an intoxicated fellow passenger, and, where there is reason to apprehend injury or annoyance from him to other passengers, they should eject him from the train or other vehicle, or require him to remain seated and behave himself; and, where by reason of the employees' negligent failure to afford such protection a passenger is injured by an intoxicated fellow passenger, the carrier is liable. But it is not liable where there has been no reasonable opportunity to discover such passenger's condition and intent; and failure to eject a passenger merely because

he is drunk, if otherwise well behaved, will not alone subject a carrier to liability for an injury caused by his acts or conduct."

And Judge THOMPSON in the discussion of this question in volume 3, page 545, section 3089, of his work on Negligence says:

"If the conduct of a railway passenger is such as to excite reasonable apprehensions that his presence will result in injury or annoyance to other passengers, it is the right and duty of the conductor to expel him, without waiting for any overt act of violence. Nor is it enough for a railway carrier to protect his passengers against actual violence from other passengers, but such a carrier is liable in damages, even in favor of passengers riding in a second-class car, for suffering them to be subjected to annoyances, not necessarily or ordinarily incident to such travel, such as hearing rough, profane and obscene language, and witnessing acts of violence and drunkenness, which the company, by the exercise of proper care and due regard for the welfare of its passengers, could prevent. For stronger reasons, such a carrier is liable in damages to a peaceable passenger who is injured in consequence of a quarrel between drunken passengers on the carrier's vehicle, where the carrier, in the exercise of the degree of care imposed upon him by the law, might have prevented the injury. But it was well held that a railway carrier was not liable to a passenger for abuse and violence from an intoxicated fellow-passenger who demanded from him money which he claimed was due him, and who threatened to take his life unless he paid it, where the conductor quieted the person intoxicated, and remained between the two during a subsequent difficulty, and delivered the intoxicated person to a policeman on reaching the next station."

The same general rule of law is announced in all of the other cases cited by counsel for the defendant; while upon the other hand, counsel for plaintiff have cited no case involving an injury to a passenger inflicted by an intoxicated passenger which holds the carrier

liable therefor, but all of them are based upon the broad general rule that the carrier is liable to a passenger for injuries inflicted by any cause if it could have been prevented by the exercise of the highest degree of care usually exercised by very cautious persons engaged in similar business, and cite in support thereof the following cases: Spohn v. Missouri Pacific Railway Co., 101 Mo. 417, l. c. 452; Westcott v. Seattle, Renton & Southern Railway Co., 41 Wash. 618; Jackson v. Boston Elevated Railway Co., 217 Mass. 515.

There is no doubt about the correctness of that general rule, but that rule does not absolutely bar an intoxicated man of his right to ride upon the railroads of the county, nor authorize a carrier of passengers to exclude him its trains without his conduct is such as to cause the agents and servants of the company in charge thereof to apprehend danger from him to his fellow passengers.

We are, therefore, clearly of the opinion that the court erred in refusing defendant's demurrer to the plaintiff's evidence.

III. The views stated in paragraphs one and two of this opinion render it unnecessary to pass upon the other legal propositions presented by the record and briefs of counsel.

The judgment of the trial court, for the reasons stated, is reversed. All concur; *Bond, P. J.,* in paragraph two and the result.

BLAIR, J.—(concurring). It is unnecessary to pass upon the constitutionality of the Act of 1909. Further, I am far from convinced that the Act is unconstitutional. With these qualifications I concur in the opinion.