242 S.W.2d 299 (1951)
THOMPSON
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28217.
St. Louis Court of Appeals, Missouri.
September 11, 1951.
*300 Barnhart & Wood, C. V. Barnhart, Marvin S. Wood and James D. Cullen, all of St. Louis, for appellant.
Mattingly, Boas & Richards, Lloyd E. Boas, and James E. Godfrey, all of St. Louis, for respondent.
HOUSER, Commissioner.
This is a personal injury action filed against St. Louis Public Service Company on account of an assault and battery on a streetcar committed by one passenger upon another. Plaintiff was awarded $3,500 by a jury in circuit court. The trial judge sustained defendant's motion to set aside the judgment entered on the verdict and rendered judgment for defendant. The order further provided that if that action should be considered error on review by the appellate court the defendant's motion for a new trial be sustained on the ground that the verdict was excessive. Plaintiff appeals, claiming that the evidence established a prima facie right to recover; that the amount of the verdict is not excessive; that plaintiff should be given an opportunity to remit; and that if the only error relates to damages the issues on retrial should be restricted to the measure of damages.
The petition charged defendant with this negligence: "That defendant by and through its employee and operator knew, or by the exercise of the highest degree of care should have known that said Elmer B. Hill was a passenger aboard said street car at said time and place while under the influence of intoxicating liquor and in a condition dangerous to the property and lives of its passengers, in time thereafter, for defendant by and through its employee and operator in the exercise of the highest degree of care to have exercised all reasonable means to have protected plaintiff from being assaulted and battered by said passenger, but defendant negligently failed to exercise any means or precautions to prevent plaintiff from being so assaulted and battered by said passenger as aforesaid."
The defendant's answer was a general denial.
The evidence favorable to plaintiff showed that on March 22, 1949 one of defendant's streetcars stopped at Grand and Franklin Avenues in St. Louis at about five minutes before 5:00 o'clock p. m. and took on passengers; that after the streetcar
doors were closed and as the car was about to proceed forward a man who was later identified as Elmer Hill staggered out and fell up against the streetcar, then sat down on the streetcar tracks, "cussing the motorman out" and calling him a "bunch of names" in a voice "loud enough to be heard all over the block"; that he dared the operator to hit him or run over him; that he stood 2 or 3 feet in front of the streetcar with his hands on the car where the front advertisement is located and said, "I dare you to run this streetcar; go ahead, move this car and run over me." Then he leaned against the streetcar. The operator did not want to let him on the car but after a minute or two the motorman said to a passenger on the streetcar, "I have to leave him on because I can't sit here and drag traffic, because I'm a little late." The operator testified that Hill stood in front of the streetcar looking at the windshield and further testified that he (the operator) opened his window and said to Hill, "You can't board a car standing there." Hill then boarded the car, used "a variety of profane words," called the operator a "big hoosier" and said he ought to go back to the farm. Hill "piddled around" until the car reached Grandel Square, then he paid his fare and took a seat back in the car.
At a later stop plaintiff boarded the car, heard a commotion, and noticed Hill "no sooner than we got on the car." Hill was "in a very slouched position * * * all sprawled out" occupying the whole seat, smoking cigarettes, turning around and blowing smoke, waving his arms and hands *301 around, gesticulating with his arms. He was under the influence of intoxicating liquor; "apparently very drunk." It was a "noisy demonstration." Hill was talking continuously in a very loud tone of voice; he did not ever quit talking. He was talking to everyone in general at first. The tone of his voice was very sarcastic and annoying. He was making abusive remarks and his language was described by the several witnesses as "vile", "profane", "vulgar", "terrible", "very violent", "cussing and profane", "using a very good assortment of profanity", "very much of a variety of profane words." He was directing his langauge at a couple of young people sitting together, a boy and a girl about 15 years of age, who were carrying school books and who were sitting two seats behind Hill. Hill was "raving" and "expounding" about hoosier kids coming to the city, getting educated and taking all of the city folks' jobs. This was his "big beef." He didn't like it. This was the "gist of his conversation * * * condemning the hoosiers." He kept "harping" on the same subject. He kept up his abusive talk to these youngsters all along the line. He would turn completely around in his seat and abuse them. Some man sitting toward the front of the car said, "Kids, you don't have to take that off of him."
Plaintiff testified that when he gave the operator his transfer he did not call the attention of the operator to the fact that there was a man in the back of the car using profane language because he took it for granted that if he could hear it so also could the operator. After plaintiff took his seat he tried to read his newspaper but was distracted and "couldn't concentrate very well on anything, with vulgar language and that kind of abuse going on." Plaintiff did not at any time get out of his seat and report to the operator that there was a passenger using profane and obscene language but when the streetcar was going across Grand Avenue Bridge a passenger named Reba Bosche went up to the operator of the streetcar and said, "Can't you make that fellow stop the cussing?" He answered, "I can't until I make a stop." The operator turned around several times but said nothing to Hill; did not direct Hill to "be still", made no effort to call a policeman or to put him off the streetcar.
Finally Hill got up off his seat and "swaggered". He "had an awful rocky boat ride going over Grand Avenue." He was "wobbling around, just like a drunk would." Hill looked over at plaintiff and "hollered" at plaintiff; gave plaintiff a "dirty dig" * * * made a "crack" at him. One witness testified that he said to plaintiff, "You are one of those so-and-so hoosiers." Hill was "very nasty and cursing." When thus addressed plaintiff at first said, "What?" then "in the usual tone" said to Hill, "Go on, get off the car." Thereupon Hill "lunged back, and took a swing" while plaintiff was still seated, striking plaintiff in the mouth with his fist. Plaintiff then got up, the two men grappled and "wrastled to the floor," plaintiff "trying to defend" himself. After the exchange of a few blows plaintiff got up, let Hill up, and told him to go on and "mind his own business." Hill "came back" at plaintiff, punched at and kicked plaintiff and then the two were separated. The operator of the streetcar came back in an attempt to stop the combatants after the fight had started. Hill did not touch or lay hands on any other passenger.
The operator of the streetcar testified that the public service company gave him instructions concerning procedure when confronted with a disorderly passenger, namely, that when a passenger who has been drinking becomes obnoxious aboard the streetcar it is the operator's duty to take him from the car. He said that the use of profanity alone, under the company rules, is sufficient to justify "some action" by the operator, namely, to ask the offender in a "nice manner" to be quiet and if he does not desist to call a policeman, and if no policeman is available, to remove the person from the car. The operator further stated that the beratement of a young couple of high school age would be sufficient provocation under his instructions to warrant putting the offender off the car.
In the melee plaintiff lost two lower incisor teeth and suffered a contusion of the left leg. The city hospital report showed *302 that when received at that institution following his arrest Hill was suffering from acute alcoholism.
While a carrier is not an insurer of the safety of its passengers it is bound to exercise the highest degree of care, the "utmost practicable care," to safely transport its passengers and to protect them from insults, annoyance and violence at the hands of fellow passengers, Lige v. Chicago, B. & Q. R. Co., 275 Mo. 249, 204 S.W. 508, L.R.A.1918F, 548; Abernathy v. Missouri Pac. R. Co., Mo.App., 217 S.W. 568; Liljegren v. United Rys. Co., Mo.App., 227 S.W. 925; Koenig v. St. Louis Public Service Co., Mo.App., 45 S.W.2d 896; Case v. St. Louis Public Service Co., 238 Mo.App. 1029, 192 S.W.2d 595, and is liable for damages naturally and directly resulting from failure to do so. Considering the evidence most favorable to plaintiff an aggravated situation is presented from which the jury properly could find that the operator of the streetcar with actual notice of his condition admitted a drunken and disorderly person as a passenger, permitting him to board the car and thereby exposing other passengers to the danger of insults, annoyance and possible violence; that thereafter the operator, with actual knowledge that he was making a commotion, cursing and verbally abusing other passengers, failed to make any attempt to quiet the disorderly person or to have him placed in custody or to evict him from the streetcar; that the operator might well have anticipated that an assault and battery might occur and might have expected "that just such an occurrence would happen, and by prompt intervention and the exercise of that degree of care which defendant owed its passengers (could) have averted plaintiff's injury." (Parentheses ours.) Koenig v. St. Louis Public Service Co., supra [45 S.W. 2d 898.] The operator had been a witness to the condition of the obstreperous Mr. Hill long before plaintiff became a passenger. Under the evidence 8 minutes elapsed after plaintiff boarded the streetcar before Hill struck him. The jury could well find that the operator could and should have intervened during that period and that plaintiff's injuries would thereby have been avoided.
For liability to attach in this type of case it is not a necessary prerequisite that the exact nature of the imminent injury to the passenger be patent from the conduct of the offender. That is to say, it is not necessary that it shall have been evident that an assault was about to be perpetrated before recovery may be had for an assault. Nor is it a defense that the carrier's servants did not know what particular person was in danger of insult or injury. It is sufficient that the carrier knew or with proper care could have known of the existence of circumstances indicating to a reasonable person that some injury to some person would occur unless the obnoxious person were ejected or controlled. Abernathy v. Missouri Pac. R. Co., supra.
The Lige case, supra, relied on heavily by respondent, is not authority for the action of the court in this instance. That was a case of a sudden, unprovoked assault by an intoxicated person without warning. In that case he previously had not been boisterous or insulting in his conduct, but on the contrary was having "a jolly good time." There were no circumstances present in the Lige case, such as appear in abundance in the record now in review, out of which an assault should have been anticipated.
Respondent contends that plaintiff provoked the assault by telling Hill to get off the car. There was evidence from which the jury could have found that that statement was made in response to a previous statement by Hill accusing plaintiff of being "one of those so-and-so hoosiers." In any event it was a question for the jury to decide whether or not plaintiff provoked the encounter and the jury resolved that question in favor of plaintiff.
To sustain the action of the trial court we would be obliged to declare as a matter of law that reasonable minds could not differ on the question whether this operator could have anticipated that some passenger would be injured in some manner by this drunken man. This we cannot hold.
*303 On the contrary, we are forced to conclude that a submissible case was made and that the trial court erred in setting aside the verdict and judgment for plaintiff and in entering judgment for defendant.
The remaining questions arise out of the following provision of the order reversing the judgment for plaintiff: "* * * if the foregoing order be considered error upon review by the Appellate Court, this Court would, and now does, sustain defendant's motion for a new trial upon ground six of said motion." Ground 6 reads: "6. Because the verdict is excessive." Plaintiff contends that (1) the verdict is not excessive; (2) that if the verdict is excessive plaintiff is entitled to make a remittitur, which he has not had an opportunity to do; and that (3) in case a new trial is ordered the issues should be limited to the measure of damages.
1. Excessive verdict? In the assault and battery plaintiff's two lower front teeth were fractured. At the time of the occurrence his mouth was bleeding and he was excited, but plaintiff said he did not then experience pain. One tooth was knocked loose and was hanging by the gum tissue; the other was fractured and it was necessary to remove the roots. Both were extracted. A partial plate was built to restore the lost teeth. The dental bill was $65. Plaintiff at the time was 25 years of age. Although there was evidence that the plate would have to be replaced every 7 to 8 years (giving rise to plaintiff's argument that, based on his life expectancy, he will be obliged to incur expenses of replacement of $500 in the future) the item of dental services in the future was not included in the instruction on damages, and presumptively was not included in the jury's award. While there was no evidence concerning humiliation or mental suffering, such items of damage may be inferred from the character and extent of the injuries without specific proof. Stoker v. Elniff, Mo.App., 33 S.W.2d 977; Mayne v. Kansas City Rys. Co., 287 Mo. 235, 229 S.W. 386; Brown v. Hannibal & St. J. R. Co., 99 Mo. 310, 12 S.W. 655. It is noted that humiliation and mental anguish were pleaded and instructed upon. In this connection plaintiff points to two cases decided by this court in which the principal item of damage arising out of an assault was humiliation and in each of which a $500 recovery was approved, Rhoades v. Alexander, Mo.App., 57 S.W.2d 736 (where the only injuries other than humiliation were three scratches on the face) and Liljegren v. United Rys. Co., supra, where plaintiff was assaulted by being kissed on the cheek. On the injury phase, plaintiff cites Long v. American Ry. Express Co., 150 La. 184, 90 So. 563, 22 A.L.R. 1493, in which a Louisiana court in 1922 increased a $500 award to $1,500 in the case of a 10 year old boy whose injuries consisted of the loss of two front teeth, and where no element of humiliation was present.
Conceding that the court should not interfere with the discretion of the jury in fixing the amount of the award unless the verdict shocks the judicial conscience, and giving due consideration to the present decreased purchasing power of the dollar, we are compelled to conclude, as did the trial court, that $3,500 is an excessive award in this case. Considering the amounts which have been awarded in other cases we believe that this verdict is excessive by at least $1,500.
2. Remittitur? In recognition of the policy of the law that litigation should be terminated at the earliest possible moment consistent with the administration of justice, we believe that the excessive verdict should be corrected by affording plaintiff an opportunity to remit rather than to order a retrial. Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157; Goslin v. Kurn, 351 Mo. 395, 173 S.W.2d 79; Weaver v. Mobile & O. R. Co., 343 Mo. 223, 120 S.W.2d 1105; Cole v. St. Louis-San Francisco R. Co., 332 Mo. 999, 61 S.W.2d 344.
3. Issues on retrial? In the event plaintiff does not elect to remit, a new trial will be necessitated. No error appearing in connection with the trial of the issue of liability, there will be no necessity to retry that issue, in view of R.S.Mo.1949, § *304 512.160, par. 3, which provides that "* * * no new trial shall be ordered as to issues in which no error appears." The inquiry in that event will be confined to the issue of damages only.
It is therefore the recommendation of the Commissioner that the judgment of the trial court be reversed, and, if plaintiff will, within fifteen days, remit here the sum of $1,500 from the verdict of the jury in his favor, the cause will be remanded with directions to the trial court to enter judgment in favor of plaintiff for $2,000; otherwise, the cause will be remanded for a new trial on the issue of damages only.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the trial court is, accordingly, reversed and the cause remanded with directions.
ANDERSON, P. J., and McCULLEN and BENNICK, JJ., concur.